Courtland C. PITTS, Petitioner,

v.

Walter W. REDMAN, Warden, Delaware Correctional Center, and Charles M. Oberly, III, Attorney General of the State of Delaware, Respondents.

Civ. A. No. 89–91–JRR.

United States District Court, D. Delaware.

Nov. 7, 1991.

Courtland C. Pitts, pro se.

Loren C. Meyers, Deputy Atty. Gen., Wilmington, Del., for respondents.

## OPINION

ROTH, Circuit Judge.[1]

Courtland C. Pitts brought this application for federal habeas relief from his state court conviction. Pitts was convicted in February 1983 of ten counts of felony theft and five counts of misdemeanor theft, but acquitted of one count of felony theft and sixteen counts of third degree burglary. He was sentenced to two years imprisonment for each felony count and one year imprisonment for each misdemeanor, for a total of 25 years. The Superior Court fur-

---

**1.** At the time this Opinion was issued, Judge Roth was sitting by designation in the District of Delaware to complete proceedings in certain cases assigned to her while she was a judge on that court.

ther directed that Pitts not be released on work release or supervised custody pursuant to 11 Del.Code Ann. § 4204(k) (1987). On appeal, the Delaware Supreme Court affirmed the convictions. *Pitts v. State,* 474 A.2d 141 (Del.1983). Pitts then applied for state post-conviction relief; after an evidentiary hearing, the Superior Court denied the motion, a decision which was affirmed on appeal by the Delaware Supreme Court. *Pitts v. State,* 549 A.2d 699 (Del. 1988) (Docket Item, "D.I.", 11A). Pitts has previously applied for federal habeas relief, but the case was dismissed for nonexhaustion of state remedies. *Pitts v. Ellingsworth,* C.A. No. 84–72–JLL (D.Del. June 4, 1984).

In his pending application for federal habeas relief, Pitts advances the following claims:

1) the state judge was required to allow him to proceed *pro se;*

2) the failure to sever the charges for trial rendered his trial fundamentally unfair;

3) because he was handcuffed and shackled during part of the trial, at some distance from his attorney, the State interfered with his right to assistance of counsel;

4) the condition that he not be placed on work release or supervised custody violates the cruel and unusual punishments clause;

5) his acquittal on the burglary charges and conviction for theft is inconsistent;

6) the evidence is insufficient to support the conviction;

7) because of pretrial publicity and publicity during the trial, he was not tried by an impartial jury;

8) his arrest, detention and the subsequent search of his house and cars violated the Fourth Amendment;

9) the trial judge was personally biased against him;

10) the trial judge should have declared a mistrial after Pitts became involved in a fight with guards in the courtroom;

11) the trial judge, when rereading jury instructions, should have also reinstructed the jury on the burden of proof, reasonable doubt, and circumstantial evidence;

12) defense counsel rendered ineffective assistance in the following manner:

a) counsel did not investigate the facts surrounding Pitts' arrest, detention and the police search of his house and cars;

b) counsel indicated that police had fingerprint evidence when there was no such evidence;

c) counsel failed to provide Pitts with a copy of the transcript for appeal purposes;

d) counsel did not ask for certain jury instructions; and

e) counsel, at a hearing on a motion for judgment of acquittal, advised the trial judge of state caselaw that was contrary to Pitts' position;

13) counsel representing him in state post-conviction proceedings failed to properly represent him.

D.I. 14, 16–17A.

The Magistrate's Report and Recommendation of December 5, 1990 recommends dismissal of the application and denial of the writ. Pitts filed timely objections to the Magistrate's Report. D.I. 23 (Dec. 12, 1990). Having reviewed the Report and Recommendation and Pitts' objections, and having conducted a *de novo* review of the record, we conclude that we agree with the Magistrate's recommendation. We adopt the Magistrate's treatment of Points Two through Thirteen, with minor comments noted below. We believe, however, that the law with regard to the right to self-representation raised in Point One is subject to more than one interpretation and thus warrants further discussion.

## I. FACTS

Between May and September 1982, a series of commercial burglaries occurred in Kent County, Delaware, described *seriatim:*

1) On May 5, 1982, employees at the Elks Club building in Dover discovered that the building had been entered during the night. An office desk and filing cabinets

had been pried open, and several doors had been damaged. A radio, the office safe, a money bag bearing the letters "RWB", and about $1,500 in cash were taken. In addition, a box of sugar packets, and a box of tea bags unavailable in retail stores, were taken. D.I. 11A, Trial Transcript, I–17–27 [hereinafter Tr.].

2) Between Sunday afternoon, May 23, 1982 and Monday morning, May 24, 1982, an intruder entered the garage of L & S Auto Sales in Dover, Delaware. Pliers, wrenches and other tools, plus a tool box, were stolen in the burglary. The estimated value of the tools and tool box was $450.00. Tr. I–52–55, 58–59.

3) On June 7, 1982, the manager of North Carolina Furniture in Dover discovered that the store had been entered during the night. A 12–inch black and white television, valued at $89.00 to $100.00, had been stolen and the office had been rifled. Tr. I–30–35.

4) During the night of June 8, 1982, the store of B. Carroll & Sons, the local International Harvester dealer, was burglarized. A number of tools, a radio, spark plugs, and jumper cables were taken. In addition, the office had been ransacked, and the intruder had attempted to break into the soda machine. The loss attributable to the theft of the tools and equipment was at least $743.00. Tr. I–36–44, 47.

5) A truck driver for Kent & Sussex Oil near Dover found on the morning of June 12, 1982, that the warehouse and office had been entered during the night. A soda machine and the office safe had been damaged. In addition, a stereo valued at $450.00, a lawn mower worth $200.00, and two fishing poles and reels valued at $150.00 had been stolen. Tr. I–104–08, 111–13.

6) On the morning of July 29, 1982, employees at Wharton & Barnard, an automobile parts store in Dover, discovered that the store had been burglarized. According to the manager, cash had been taken, as had numerous hand tools, an air hammer, a utility light, battery charger, shock absorbers, a carburetor, tool box, and a jack. The items were valued at $820.00. Tr. I–60–68.

7) Also on July 29, 1982, employees of the Delaware Farm Credit Bureau in Dover reported a burglary. A window had been broken and the offices had been ransacked. A 35mm camera, a Polaroid camera, calculators, small dictating machines, and microcassettes for use in the stolen dictating machines had been stolen. The 35mm camera was valued at $578.85. Tr. I–69–77.

8) The owners of Neaton's Tire Service on South Governors Avenue in Dover reported a burglary on August 14, 1982. The intruders had entered the warehouse adjacent to the store and the store office had been ransacked. Approximately 20 tires had been stolen, along with air shock absorbers, regular shock absorbers, and an alternator. The stolen items were valued at approximately $4,500.00. Tr. I–78–90.

9) On August 18, 1982, employees of Winner Ford in Dover discovered that the premises had been entered during the night. Two am/fm stereo cassette radios, one valued at $140.00 and the other at $114.00, had been taken from a display case. Tr. I–91–97.

10) The following morning, August 19, 1982, employees of Link Enterprises near Dover reported a burglary. They determined that two chain saws, each valued at $300.00, a calculator worth $25.00, and $175.00 in cash had been taken. Tr. I–122–25.

11) The Super Soda Center, located at State Street and Cooper's Corner near Dover, was burglarized during the night of August 18 and employees discovered the burglary on the morning of August 19, 1982. The office had been ransacked and a money bag containing over $3,660.00 had been removed from the safe. Tr. I–142–45.

12) On September 4, 1982, employees of the Super Soda Center on Saulsbury Road in Dover reported a burglary to police. The safe had been opened and a money bag containing $50.00 had been taken, along with $1,500.00 in cash. Tr. I–150–52, 155–57.

13) During the weekend of September 11–12, burglars entered Nucar Toyota in Milford; employees discovered the entry on

Monday morning, September 13, 1982. A showcase and offices had been ransacked, and radios and cassette players valued at $600.00 had been taken. Tr. I–161–67.

14) Employees of Wright's Auto Parts in Milford discovered on September 15, 1982 that the store had been burglarized. A side door had been forced open and merchandise and office records were scattered throughout the building. The office safe had also been damaged in an effort to open it. A variety of tools, gloves and car deodorizers were stolen; including the damage to the door and safe, the business reported a loss of more than $1,500.00 to its insurer. Tr. I–98–102.

15) Also on September 15, 1982, employees at Esposito's Hair Concept in Milford reported a burglary. Various papers, magazines, and beauty supplies had been thrown onto the floor. A portable radio belonging to one of the hairdressers had been stolen. In addition, two pairs of clippers, worth $30.00 each, and about $30.00 in change, all belonging to one of the barbers, had been taken, as had a key to the soda machine. Tr. I–127–31, 135–41, 174–76.

Pitts was arrested on September 15, 1982 after a police officer saw several boxes with the word "Toyota" printed in bold letters in the open trunk of the car Pitts was driving. Tr. I–185. The police officer had been prompted to stop and investigate because the car was parked in the road, trunk open, and several people were peering into its interior. Tr. I–185. The officer was aware that Pitts was a suspect in the Nucar Toyota burglary. Tr. I–186. After his arrest, Pitts was issued a traffic ticket for having a car stopped on the roadway, and a wrecker was called and the vehicle towed to the police barracks. Tr. I–187. A search warrant for the car was executed later that day, based in part on the police officer's observation of the boxes. D.I. 11A, Sept. 15, 1982, Search Warrant Affidavit. The search of the car, done shortly after 11:00 p.m. on September 15, uncovered items stolen from Nucar Toyota, L & S Auto Sales, Wright's Auto Parts, Esposito's Hair Concept, and B. Carroll & Sons.

Tr. II–25(a)–37(a), 99(a)–100(a). In addition, two tires mounted on the rear wheels had been stolen from Neaton's Tire Center and a radio taken from Winner Ford was in the dashboard; these items were seized on September 22 pursuant to a search warrant. Tr. II–109(a)–12(a). According to the record, Pitts was formally charged with burglary shortly after 11:00 p.m. on September 15, 1982, after the car had been searched. Post–Conviction Hearing Transcript "HTr." 120.

At 1:35 a.m. on the morning of September 16, 1982, a search warrant was issued authorizing the search of a house located at 17 South Mechanic Street in Camden, Delaware, believed to be Pitts' residence. Tr. II–39(a)–42(a); Tr. IV–5(b). The warrant request was based on the discovery of stolen property in the car, Pitts' registration and operation of the car, and citizen information that the car driven by Pitts was usually parked in the parking place for the residence. D.I. 11A, Sept. 16, 1982, Search Warrant Affidavit. From the basement of the residence, police removed tires, automotive parts, am/fm stereo radio cassette players, chain saws, a utility light, fishing poles, a pry bar, and a red maul. Pitts' brother, who was in the house during the search, told police that the items belonged to Pitts. Tr. IV–17(b). The items were identified as having been stolen from Wharton & Barnard, Neaton's Tire Center, Link Enterprise, Kent & Sussex Oil, and B. Carroll & Sons. Tr. II–42(a)–49(a), 113(a)–17(a). In the kitchen, police found a battery charger stolen from Wharton & Barnard and the tea bags from the Elks Club. Tr. II–49(a)–50(a). In the living room, police discovered the portable television taken from North Carolina Furniture and a clock radio stolen from Nucar Toyota; in the dining room was an am/fm stereo cassette deck taken from Winner Ford. Tr. II–51(a), 54(a)–56(a).

Upstairs, in a bedroom believed to be used by Pitts, Tr. II–58(a), police found coins and air fresheners determined to have come from Wright's Auto Parts. Tr. II–58(a)–59(a). In a dresser in the bedroom, police discovered a brown paper bag identified as coming from the Super Soda

Center on Saulsbury Road and the money bag from the Elks Club. Tr. II–59(a)–60(a), 114(a), 118(a)–19(a). On the dresser, police uncovered coins identified as having come from Esposito's Hair Concept. Tr. II–66(a)–67(a). The police found the 35mm camera belonging to the Delaware Farm Credit Bureau in a closet. Tr. II–60(a), 119(a). In the other bedroom, occupied by Pitts' brother, police found a money bag belonging to the Super Soda Center on South State Street. Tr. II–61(a).

Thereafter, Pitts was charged by indictment with sixteen counts of burglary third degree, twelve counts of felony theft, six counts of misdemeanor criminal mischief, four counts of misdemeanor theft, and one count of possession of a controlled non-narcotic substance. D.I. 11A. Pitts went to trial on all but the criminal mischief and drug charges. *Id.*

At trial Pitts testified that he had not lived at the South Mechanic Street address since May 1982, when he had moved to his girl friend's house. The Mechanic Street house was in the name of his deceased father, although the electric bill was in Pitts' name. Pitts' father had been an electrician and mechanic and had stored numerous tools at the house. From May through at least August, 1982, the house had been occupied by Pitts' brother and an individual by the name of "Mongo." [2] The car parked in front of the house had originally belonged to Pitts but he claimed that he had sold it to Mongo. In addition, Pitts testified that the tires and radios seized from the car that he had been driving when he was detained had been purchased at Spence's Bazaar. Finally, the tape player seen by the police officer in the trunk of the car had allegedly been purchased by Pitts on Kirkwood Street in Dover. Tr. III–227(a)–250(a).

## II. RIGHT OF SELF-REPRESENTATION

■ The question we first address is whether a trial judge's dismissal of a de-

fendant's request to proceed *pro se* violates the defendant's Sixth Amendment right to represent himself when that request was not clearly made until the third day of trial. We hold that it does not.

### The Right of Self–Representation

■ Under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), a criminal defendant has the Sixth Amendment right to represent himself. Because the accused waives "many of the traditional benefits associated with the right to counsel," this right does not attach automatically, but must be affirmatively asserted. *Wiesner v. Abrams,* 726 F.Supp. 912, 917 (E.D.N.Y.1989), *aff'd* 909 F.2d 1473 (2d Cir.1990). Ambiguous requests are decided in favor of protecting the defendant's constitutional right to counsel. Where it is not clear whether the right to counsel has been waived in favor of self-representation, "the nature of the two rights makes it reasonable to favor the right to counsel which, if denied, leaves the average defendant helpless." *Tuitt v. Fair,* 822 F.2d 166, 174 (1st Cir.), *cert. denied,* 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (Supreme Court warning to " 'indulge every reasonable presumption against waiver' of fundamental constitutional rights").

[3–5] A *pro se* request must be clear, unequivocal and timely. *See Faretta,* 422 U.S. at 836, 95 S.Ct. at 2541; *Wiesner,* 726 F.Supp. at 918. Requests are clear if petitioner unambiguously states his desire to the court such that "no reasonable person could say the request was not made." *Dorman v. Wainwright,* 798 F.2d 1358, 1366 (11th Cir.1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 801 (1987). Requests are unequivocal if the defendant knowingly, voluntarily and intelligently seeks to waive counsel. *Faretta,* 422 U.S. at 836, 95 S.Ct. at 2541; *Marshall v. Dugger,* 925 F.2d 374 (11th Cir.1991) (self-repre-

---

**2.** Although extensive efforts were made to find "Mongo," no other information about his where-     abouts was uncovered. Tr. II–22(a)–23(a).

sentation was not affirmatively chosen); *United States v. Oakey*, 853 F.2d 551, 553 (7th Cir.1988), *cert. denied*, 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 977 (1989) (request was ambiguous). Voluntariness is not diminished because self-representation may be second choice to new counsel. *See Adams v. Carroll*, 875 F.2d 1441, 1445 (9th Cir.1989); *Wiesner*, 726 F.Supp. at 919 (citing *Johnstone v. Kelly*, 808 F.2d 214, 216 n. 2 (2d Cir.1986), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987)). Similarly, accompanying a self-representation request by expressions of feeling "forced" to proceed uncounseled does not render the request equivocal. *See United States v. Robinson*, 913 F.2d 712, 714 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1006, 112 L.Ed.2d 1089 (1991).

[6] There need be no express examination on the record to ensure that the defendant's choice is his own. Defendant's understanding is sufficient, *Stano v. Dugger*, 846 F.2d 1286, 1288 (11th Cir.1988), so long as the record contains facts indicating that the defendant recognized he was relinquishing his right to counsel. *Id. See Dorman*, 798 F.2d at 1367 (failure to hold formal hearing on waiver of counsel was not sufficient reason to deny *pro se* request, where record clearly indicated defendant's knowledge of the risks).

[7] Most importantly, a request for self-representation must also be timely. To be timely, the demand must be made before meaningful trial proceedings have begun. *United States v. Smith*, 780 F.2d 810, 811 (9th Cir.1986); *Oakey*, 853 F.2d at 553; *Horton v. Dugger*, 895 F.2d 714, 717 (11th Cir.1990). This is generally understood to be before the jury is sworn. *See Smith*, 780 F.2d at 811 (request is timely if made prior to jury selection); *Horton*, 895 F.2d at 717 (citing *Chapman v. United States*, 553 F.2d 886, 894 (5th Cir.1977) (request is timely if made prior to the jury's being selected or sworn)). *See also United States v. Jones*, 938 F.2d 737, 743 (7th Cir.1991) (request untimely when made on

second day of trial, after jury selected but unsworn); *United States v. Lawrence*, 605 F.2d 1321, 1324–5 (4th Cir.1979), *cert. denied*, 444 U.S. 1084, 100 S.Ct. 1041, 62 L.Ed.2d 770 (1980) (request untimely when made after jury selected but before taking its oath). *But see Wiesner*, 726 F.Supp. at 920 (request made on the day trial was to begin was not untimely; a defendant "is entitled to have a last clear chance to assert his constitutional right before meaningful trial proceedings have begun.").

[8, 9] The trial judge has the discretion to deny *pro se* requests once the trial begins. *Oakey*, 853 F.2d at 553; *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir.1965), *cert. denied, sub nom Di Blasi v. McMann*, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966). In order to proceed *pro se* once the trial has begun with defendant represented by counsel, defendant must show that the "prejudice to [his] legitimate interests ... overbalances the potential disruption of proceedings already in progress." *Lawrence*, 605 F.2d at 1324 (citing *Denno*, 348 F.2d at 15). Timeliness frequently is a successful objection to *pro se* requests, and the trial judge's decision is given great deference on appeal. *See Horton*, 895 F.2d at 717 (request untimely when made 15 minutes before trial was to begin); *Oakey*, 853 F.2d at 553 (request denied as untimely when made prior to the fourth day of trial); *Fulford v. Maggio*, 692 F.2d 354, 362 (5th Cir.1982), *rev'd on other grounds*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (no abuse of discretion to deny *pro se* request made on the day of trial, after jury selected and sworn); *Denno*, 348 F.2d at 15 ("considerable weight" given to the trial judge's assessment of the weight of defendant's interests against possibility of trial disruption).[3]

[10] Even if the right of self-representation has attached after proper assertion, at least one court has held that the privilege may later be waived. *Brown v. Wainwright*, 665 F.2d 607 (5th Cir.1982). Unlike

---

3. Even a timely request may be denied if it is found to be interposed for the purpose of delaying the trial. *See Lawrence*, 605 F.2d at 1324–

25. Note, however, that having the purpose to delay is to be distinguished from having that effect. *Wiesner*, 726 F.Supp. at 920.

the Sixth Amendment right to counsel, which is presumed until waived, the right of self-representation may vanish if the defendant later vacillates or accepts the representation of counsel at trial. *Id.* at 609–10 (defendant waived right to self-representation by failing until the third day of trial to renew a pre-trial request to proceed *pro se,* and by accepting the services of counsel until that time). *See United States v. Bennett,* 539 F.2d 45, 50–51 (10th Cir. 1976) (defendant forfeited right to self-representation by vacillating before trial). *Concur Chapman,* 553 F.2d at 893 n. 12. A divided court in *Wainwright* held that the "stringent" requirements for ensuring intelligent waiver of counsel "do not apply in full force" to waiver of the right of self-representation. *Wainwright,* 665 F.2d at 611. *But see id.* at 613–14 (Hill, J., dissenting) (right of self-representation is not waived more easily than right to counsel). Once the right has attached, some courts also condition its continuation on proper courtroom behavior. *See Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46 ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct.")[4] On balance, the right to self-representation is fragile.

*Application*

In the Third Circuit a defendant may make a request to represent himself up until the "eve of trial." *Government of Virgin Islands v. James,* 934 F.2d 468, 470 (3d Cir.1991). This implies that once a trial has begun, the trial judge has the discretion, as in other circuits, to deny a request if the harm to the defendant from the denial is outweighed by considerations of trial delay. In fact, in all cases where the Court of Appeals for the Third Circuit has discussed the right of self-representation,

the requests satisfied the timeliness threshold. *See James,* 934 F.2d at 470 (request made just before jury selection on day of trial); *McMahon v. Fulcomer,* 821 F.2d 934 (3d Cir.1987) (request made on day of jury selection); *Piankhy v. Cuyler,* 703 F.2d 728, 729 (3d Cir.1983) (judge held colloquy with defendant three days prior to trial); *United States v. Welty,* 674 F.2d 185, 187 (3d Cir.1982) (request made just before the jury was to be selected for trial).

In this case, Pitts made his request to represent himself on the third day of trial, after the government had put on 23 witnesses. *See* Tr. II–5(a)–6(a), 14(a); Tr. I, Index to Testimony at 2–3. By nearly every account, this request was too late. In fact, the Court of Appeals for the Ninth Circuit based a denial of a *pro se* motion expressly on the fact that it was brought on the third day of trial. *See Smith,* 780 F.2d 810.

Pitts claims that he requested to represent himself both before and during trial. *See* HTr. 62–3; D.I. 16, Petitioner's Reply to State's Answer, 4. Pitts' trial attorney similarly testified at the post-conviction hearing that there may have been more than one self-representation request:

DEFENSE ATTORNEY FOR THE HEARING: ... [W]as [Pitts] given the alternative of having you stay or [were] you ... sort of forced company whether he wanted you or not?

PITTS' TRIAL ATTORNEY: My recollection is, and there might have been something prior to that time [the third day of trial] even done in the beginning of the trial where Mr. Pitts didn't want me there—it [the third-day request] might not have been the first time that occurred. I think there might have been something that happened right in the beginning of trial where Mr. Pitts said he

---

**4.** Though the government relies heavily on Pitts' repeated outbursts during trial as justification for the trial court's denial of the *pro se* request, D.I. 14, State's Answer, 14–15, and even attributes this justification to the trial judge, *id.,* the record does not indicate that the trial judge found Pitts' emotional participation preclusive. *Cf. Savage v. Estelle,* 924 F.2d 1459 (9th Cir. 1990) (affirming district court's denial of a

knowing and intelligent *pro se* request where it was found that defendant's stutter prohibited him from abiding by courtroom protocol), *cert. denied,* —— U.S. ——, 111 S.Ct. 2900, 115 L.Ed.2d 1064 (1991). As noted below, the trial judge appears to have based his decision on the timing of the request and, albeit improperly, on Pitts' lack of legal acumen.

didn't want me and then an alternative was given to him at that time ... HTr. 105. However, a thorough examination of the record reveals no such earlier request(s) by either Pitts or his trial attorney.

■ As noted, if a request is made once a trial has begun the judge must balance harm to the defendant against trial delay. Harm to the defendant could result, *inter alia*, from the ineffectiveness of current counsel. *Cf. Smith*, 780 F.2d at 811 & n. 2. However, it is clear that a defendant cannot claim prejudice resulting in ineffective assistance merely because his defense lawyer does not accede to all his demands. *See Strickland v. Washington*, 466 U.S. 668, 689–90, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

■ In this case, at the time the *pro se* request was made the trial judge immediately sought to understand whether Pitts' appointed attorney was unsatisfactory.[5] Tr. II–3(a). Pitts complained that his attorney had not done an adequate job cross-examining witnesses,[6] Tr. II–4(a), that his attorney had lied to him about the unavailability of witnesses, Tr. II–7(a),[7] and that he

5. Immediately after the court convened on the third day of trial, the following conversation occurred among the court, the defendant and his attorney:

MR. LOBUE [DEFENSE ATTORNEY]: I have spoken with the defendant Mr. Pitts and he has advised me this morning he does not want me to continue as counsel and he desires to conduct the rest of the trial by himself.
THE COURT: All right. If he will come to the podium. All right. Sir, you want to conduct the rest of the trial by yourself; is that correct?
THE DEFENDANT: I request I be given new counsel because I am not satisfied.
THE COURT: What?
THE DEFENDANT: I am requesting that Mr. Lobue *resign* from my case because I ain't feeling he is doing an adequate job. I am requesting another counsel.
THE COURT: That is your privilege. Will you state your reasons for your application.
Tr. II–3(a).

6. Specifically, Pitts alleges

THE DEFENDANT: So far I feel this lawyer hasn't done adequate job on cross-examine witnesses. The only time he cross-examined these witnesses or whatever beyond me telling him what to say. I don't think this is necessary. If this man is a professional I don't think I should tell him how to cross-examine.
THE COURT: How do you feel he did not do a good job in cross-examination? Has he not done anything that you asked?
THE DEFENDANT: He has done nothing on his own. I can speak for myself. I don't *need anyone to come up and say what I'm* saying. I need a lawyer to defend me and not repeat what is coming out of my mouth.
THE COURT: You feel he hasn't asked enough questions?
THE DEFENDANT: I feel he hasn't asked any of his own.
THE COURT: There is a possibility that some witnesses shouldn't have been cross-examined at all. Sometimes that is good trial strategy to not ask questions.

...

[Y]ou can't always tell the value of the trial strategy by the number of questions asked.
...
Sometimes *it is better to not ask a question* because you get a damaging answer.... I presume you are aware of that.
THE DEFENDANT: Right.
Tr. II–3(a)–5(a).

7. The complaint in this instance does not appear to have substance. Pitts alleges he was told that one of his witnesses was not going to testify, but the witness was sitting in the courtroom ready to be called to the stand at the time of his complaint.

THE DEFENDANT: I feel this lawyer has been lying to me.
THE COURT: In what way? Please indicate in detail so I will know and make a decision.
THE DEFENDANT: For reasons I don't want to indicate.

· · · · ·

THE COURT: In what way do you feel he has been lying? I have to know.

· · · · ·

THE DEFENDANT: As far as my witness being present and not being able to find them. I don't think there's no sincere effort on his part to do this.
THE COURT: What witness are you talking about? Go in detail and give me specifics here now.

· · · · ·

THE DEFENDANT: I said I feel he lied to me when he told me my witness didn't want to testify.

· · · · ·

THE COURT: Which witness is that?
THE DEFENDANT: Phyllis Brown.
THE COURT: Phyllis Brown. When did he tell you that?
THE DEFENDANT: I don't know. First day of trial I guess. I'm not sure.
THE COURT: He said to you that she did not want to testify?
(Footnote 7 continued on p. 918)

had not been "representing me adequately, sufficiently to the best of his ability." Tr. II–13(a). Pitts had difficulty articulating specific reasons for his displeasure.[8]

The defense attorney explained to the court that he had hired an experienced investigator to locate witnesses for the trial, and that all but one of the witnesses requested by Pitts had been found.[9] Tr. II–21(a)–22(a). The judge found the attorney's account satisfactory, and that Pitts would not be prejudiced by continued representation by the Public Defender's Office. He assured the defendant that he would be given full opportunity to consult with counsel after each witness had testified, and would be allowed to write out any questions to defense counsel that he felt should be asked of the witnesses. Tr. II–24(a).

The court then addressed the timeliness side of the balance. It is obvious from the judge's comments that the court was concerned about the orderly passage of the litigation and the open-ended disruption looming out of the request, even though during the colloquy there was not a concrete statement by the trial judge that he would find the anticipated delay to be disruptive:

> THE COURT: What you want is another attorney to be appointed for you now; is that correct?
> THE DEFENDANT: Right.

THE COURT: In other words, another attorney to come in cold in this case and start it right now.

THE DEFENDANT: I don't care whether he come [sic] in or not.

THE COURT: The case is going to go forward to completion today and tomorrow regardless of what ruling I make. . . .

. . . . .

THE COURT: You want another lawyer to represent you at this time.

THE DEFENDANT: I don't care if it is put off or what. I want another lawyer on my case.

THE COURT: If another lawyer is appointed to represent you do you want to go ahead with the trial today or have it held some other time?

THE DEFENDANT: I want it put off and when I do—

THE COURT: For how long?

THE DEFENDANT: However long it takes the lawyer to get familiar with my case.

THE COURT: How long are you requesting?

THE DEFENDANT: I don't know. Whatever it takes for the lawyer to get familiarized with my case. Also if there is another lawyer—

THE COURT: In other words, you are saying continue it *indefinitely* until you

Tr. II–7(a)–8(a).

8. THE DEFENDANT: I don't want this man to represent me. That's it.
THE COURT: I have that general impression. In order to rule on that issue I have to know specifics from you and you are just making some general comments here and I am trying to get specifics. The general comments don't have much value.
THE DEFENDANT: That's all the case is, general comments. You want me to go ahead with this lawyer is I don't want him?

---

THE DEFENDANT: Said she didn't want to testify.

. . . . .

THE COURT: Is she here to testify?
THE DEFENDANT: Yes. She is here to testify. Yes.
THE COURT: She is quite willing to testify?
THE DEFENDANT: Right.
Tr. II–7(a)–9(a).

9. The attorney had also brought a witness down from prison to testify. In search of a witness only known as "Mongo," the attorney and the investigator sought out employees from Mongo's purported summer job, to no avail: "No one ever heard of a person named Mongo." The trial judge then asked the defendant:
THE COURT: Do you have any further witnesses and do you know where they can be located?
THE DEFENDANT: No, I don't.
THE COURT: Do you know anything else that could possibly be done to locate this witness [Mongo]?
THE DEFENDANT: No, I don't.
THE COURT: All witnesses are here and everything that you know of that can be done to locate them has been done; is that correct?
THE DEFENDANT: Yes.
THE COURT: All right.
Tr. II–21(a)–23(a).

have determined that your lawyer is familiar with your case.

Tr. II–5(a)–6(a), 14(a) (emphasis added). "Indefinite" delay appeared to be imminent.

Just as a defendant need recite no "talismanic formula" to make a legitimate *pro se* request, *Stano v. Dugger,* 921 F.2d 1125, 1143 (11th Cir.1991) (citation omitted), we cannot require a trial judge to make express mention of timeliness when the record aptly reveals his concerns. The judge properly balanced the potential harm to the defendant against the weighty delay of trial. Though his reasons were only partially articulated on the record, the basis for the judge's decision was apparent and the denial of Pitts' *pro se* request was entirely justified.

*Other Third Circuit Authority*

Other authority in the Third Circuit is not to the contrary. The Court of Appeals for the Third Circuit has adopted a two-step inquiry to address the sincerity of a *pro se* request. *See Welty,* 674 F.2d at 187. However, we conclude that such a request must also be subject to the "harm to defendant/trial delay" balancing test described above when the request is made after a trial has begun.

▇▇▇ When a defendant clearly expresses the wish to represent himself before the onset of meaningful trial proceedings, a trial judge must undertake two lines of inquiry. Initially, the court must consider the defendant's reasons for wishing to change his current representation. If the defendant cannot show good cause for replacement of counsel yet insists on proceeding *pro se,* the judge must then fully inform the defendant about the risks and implications of litigation without counsel. *See also McMahon,* 821 F.2d at 942; *Piankhy,* 703 F.2d at 731 n. 3 (applying the *Welty* formulation to appeals in federal habeas corpus proceedings).

As noted, the courts are hesitant to grant a request for self-representation, even when the request is timely, if there is no clear indication that the defendant is aware of his undertaking. Without both lines of inquiry urged in *Welty,* the risk of involuntary waiver of the right to counsel is high. Two defendants in the Third Circuit have successfully argued that they were too hastily granted the right to proceed *pro se. See Welty,* 674 F.2d 185; *McMahon,* 821 F.2d 934.[10] In *Welty,* the defendant requested to "go without" his court-appointed defense counsel just before the jury was to be selected for his trial, after the trial judge denied the defendant's request for substitute counsel. The trial judge granted the defendant's request without inquiry, based on the judge's belief that the defendant was trying to delay the trial. *Welty,* 674 F.2d at 187. The Court of Appeals for the Third Circuit felt that the waiver of the right to counsel should not be taken so lightly, and accordingly laid down the two-step inquiry noted above. *Id.* at 187–88. The *Welty* court urged:

> It is vital that the district court take particular pains in discharging its responsibility to conduct these inquiries concerning substitution of counsel and waiver of counsel. *Perfunctory questioning is not sufficient.*

*Welty,* 674 F.2d at 187 (emphasis added).

In *McMahon,* the Court of Appeals reversed the trial judge's summary grant of petitioner's motion to discharge retained counsel, despite the judge's contemporaneous appointment of stand-by counsel, where there was no inquiry on the record indicating defendant's knowing assumption of the risks of proceeding *pro se. McMahon,* 821 F.2d at 945. The trial judge must ensure that the defendant's waiver of counsel is "understandingly and wisely made." *Id.* This can only be accomplished from a "penetrating and comprehensive examination of all the circumstances, ... and only after bringing home to the defendant the perils he faces in dispensing with legal representation." *Id.* The motion had been

---

**10.** The Court of Appeals for the Ninth Circuit has also developed an "inquiry" requirement, and has invalidated grants of self-representation made without full colloquy. *See United States* *v. Balough,* 820 F.2d 1485, 1487–88 (9th Cir. 1987); *United States v. Rylander,* 714 F.2d 996, 1005 (9th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984).

made on the day of petitioner's jury selection. *Id.* at 936.

Naturally, if the trial record contains evidence that an extensive inquiry has occurred, a defendant's wish to proceed *pro se* will be honored. *See Government of Virgin Islands v. James,* 934 F.2d 468, 471–72 (3d Cir.1991) ("lengthy colloquy" on the record was sufficient to indicate voluntary and intelligent waiver; no "rote dialogue" required by trial judge); *United States v. McFadden,* 630 F.2d 963 (3d Cir. 1980), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981) (defendant who had been fully informed of the risks of self-representation could not later claim denial of the right to counsel). *Accord Welty,* 674 F.2d at 192.

■ Additional considerations must be kept in mind when the defendant does not assert his desire to represent himself in a timely manner, however. In such a case we conclude that an expanded *Welty* line of inquiry is appropriate. The trial judge should initially administer the first prong of the *Welty* inquiry—a determination of whether the defendant has cause to replace current counsel. In effect, this is the same test described in timeliness cases such as *Oakey, supra:* a determination of prejudice to the defendant. Where the request has been made after the proceedings have begun, however, the judge must then assess the potential for trial delay. Only if the trial judge determines that prejudice to defendant's legitimate interests outweighs the disruptive impact of trial delay does the second prong of the *Welty* inquiry then become necessary.[11]

■ In the present case, the defendant's request for self-representation surfaced on the third day of trial. The trial judge carefully evaluated the potential harm to the defendant of continuing with his current counsel, Tr. II–3(a)–13(a); this inquiry also constituted the first half of the *Welty* formula to determine whether Pitts had cause to replace his current counsel. It is implicit in light of the responses that the trial judge received to his inquiries and of the other information available to him concerning the availability of witnesses and the efforts to locate them, that the trial judge determined the disruptive impact of delay outweighed any prejudice to the defendant. As a result of this conclusion and the consequential decision neither to replace defendant's counsel nor to permit him to represent himself, the judge did not need to proceed to assess the defendant's understanding of *pro se* risks, the second prong of the test urged in *Welty.*[12]

---

11. On the other hand, one court in the Second Circuit has held that denial of self-representation cannot be made without a thorough inquiry, even where the request was made on the first day of trial. *See Wiesner,* 726 F.Supp. at 917–18, 921 (court must determine "genuineness" of *pro se* request through a series of questions; request improperly denied because, *inter alia,* court made no inquiry and finding of actual purpose to delay).

Another court in the same circuit feels that judges should err on the side of granting *pro se* requests along with stand-by counsel, rather than succumbing to the "paternalistic" forces of "Big Government" and forcing unwanted representation on a defendant. *Johnstone v. Kelly,* 633 F.Supp. 1245, 1248 (S.D.N.Y.), *rev'd,* 808 F.2d 214 (2d Cir.1986), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987).

The circuits are divided on the extent of inquiry required for the waiver of counsel generally. *See McDowell v. United States,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987) (White, J., dissenting from a denial of certiorari).

12. There was much discussion on the record about Pitts' scant legal qualifications. *See* Tr. II–16(a), 17(a)–21(a), 24(a) ("The defendant has indicated that he really is not competent to proceed with cross-examination or to present objections."); HTr. 107 (post-conviction hearing statement by Pitts' attorney to the effect that the trial judge was "concerned the man didn't have legal background"). However, it is well-established that lack of credentials alone cannot be a basis for refusing a defendant's *pro se* request. *Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir. 1986), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); *United States v. Bennett,* 539 F.2d 45, 50–51 (10th Cir.), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976). *See Orazio v. Dugger,* 876 F.2d 1508, 1512 (11th Cir.1989) (legal knowledge bears no relevance on right of self-representation); *Wiesner,* 726 F.Supp. at 919 ("At a minimum, a defendant's acknowledgement that he is not well versed in the law indicates that that defendant indeed has his wits about him."). Had the request been timely, the denial might have been improper to the extent it was based on this ground.

If Pitts' request had been made before meaningful trial proceedings had begun, the trial judge's failure to continue on to the second prong of the *Welty* inquiry with the defendant might have fatally tainted the judge's denial of the *pro se* request. There is strong authority suggesting that the right to self-representation, properly asserted, is not subject to harmless error analysis. *See Johnstone,* 808 F.2d at 218; *Wiesner,* 726 F.Supp. at 917 (denial of the right to proceed *pro se* requires automatic reversal of a criminal conviction). *See also Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991).

Each of the cases holding harmless error inapplicable to the denial of self-representation is, however, premised on the right's proper assertion. For the right to attach, and therefore for harmless error analysis to become inapplicable, the *pro se* request must be made clearly, unequivocally and in a timely fashion. In the instant case, defendant's *pro se* request was legitimately dismissed as untimely, after the appropriate prejudice/disruption balancing by the trial judge. Moreover, no court has granted a *pro se* request made for the first time on the third day of trial, as defendant did here. The likelihood of disruption is high at this point when meaningful trial proceedings had begun. After inquiring of the defendant and noting his vague responses, the trial judge clearly concluded that the defendant would not suffer harm from a denial of his request. Given the circumstances, we cannot find that this conclusion was in error. For these reasons, we feel that the trial judge did not abuse his discretion in denying Pitts' midtrial *pro se* request. Pitts' Sixth Amendment rights were not violated and habeas relief is not warranted on this ground.

## III. ADDITIONAL CLAIMS

Pitts raises twelve additional concerns in his petition for habeas relief. Some allegations overlap, as with Point 8 (Fourth Amendment violation) and Point 12(a) (ineffective assistance of counsel stemming from failure to investigate Fourth Amend-

ment violation). We review each claim below, combining the allegations where convenient. As noted above, because we believe that Pitts' constitutional rights were not violated by any of the enumerated actions, we will deny federal habeas relief.

*Failure to Sever Charges*

■ Pitts was charged in a 39-count indictment with a variety of offenses stemming from fifteen separate incidents occurring within a five-month period. Prior to trial, Pitts moved to sever the offenses, contending that severance was required under Super.Ct.Crim.R. 14. According to Pitts joinder made it more likely that the jury would cumulate evidence of the various offenses and would also infer a criminal disposition on his part. The Superior Court denied the pretrial motion.

To be entitled to federal habeas relief because of joinder of offenses, Pitts must demonstrate "prejudice so great as to deny [him] his ... right to a fair trial." *United States v. Lane,* 474 U.S. 438, 446, n. 8, 106 S.Ct. 725, 730, n. 8, 88 L.Ed.2d 814 (1986). " '[O]nly *constitutional* error is a ground' for the issuance of a writ of habeas corpus." *Leach v. Kolb,* 911 F.2d 1249, 1258 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 441, 112 L.Ed.2d 424 (1990), *citing Bell v. Duckworth,* 861 F.2d 169, 170 (7th Cir.1988) (emphasis in original). *See also United States v. Reicherter,* 647 F.2d 397, 400 (3d Cir.1981) (on direct appeal of denial of severance motion, appellant must "demonstrate clear and substantial prejudice resulting in a manifestly unfair trial"). The Third Circuit has held under similar circumstances that a defendant's trial is not rendered fundamentally unfair by the joint introduction of evidence regarding the crimes alleged in a multi-count indictment where such evidence "might well have been admissible under [Fed.R.Evid.] Rule 404(b) ... to prove opportunity, preparation, plan, or knowledge" if separate trials had been ordered.[13] *United States v. Thomas,* 610 F.2d 1166, 1169 (3d Cir.1979). *See Reicherter,* 647 F.2d at 400 (no prejudice where evidence would have been admissible under Rule 404(b)). Examining the facts at bar,

---

**13.** Rule 404(b) of the Delaware Uniform Rules of Evidence tracks Fed.R.Evid. 404(b).

the evidence of each burglary and theft would have been mutually admissible in separate trials. *See generally Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (analyzing Fed. R.Evid. 404(b)). *See also United States v. Foutz*, 540 F.2d 733, 736 (4th Cir.1976) (improper joinder); *Commonwealth v. Lasch*, 464 Pa. 573, 347 A.2d 690, 697–98 (1975) (proper joinder).

Any likelihood of prejudice was also minimized by the trial judge's instructions to the jury, Tr. IV–65(b), 85(b)–86(b), which indicated that the evidence of each offense was to be considered separately. Any potential "cumulative effect" resulting from joinder of the offenses was thus reduced. *See Thomas*, 610 F.2d at 1170 n. 7. In addition, the jurors' acquittal of Pitts on all of the burglary counts and one of the felony theft counts indicated that they were able to separate the evidence as to each offense and that they did not properly infer that Pitts had a criminal disposition. *Id.* at 1170.

Pitts' final allegation in this regard is apparently that he wanted to testify regarding some, but not all of the counts, and the failure to sever the charges for trial prevented him from making that decision. However, Pitts has only offered unsupported assertions of prejudice, failing to " 'present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine.' " *Reicherter*, 647 F.2d at 401, *citing Baker v. United States*, 401 F.2d 958, 977 (D.C.Cir.1968), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). *See United States v. Gorecki*, 813 F.2d 40, 43 (3d Cir.1987); *United States v. Slawik*, 408 F.Supp. 190, 215 (D.Del.1975), *aff'd*, 564 F.2d 90 (3d Cir.1977). Moreover, Pitts later complained that he did not want his trial to be strung out over a two and a half year period. Tr. I–115–17. This claim, therefore, must fail.

*Interference with Access to Counsel*

■ During the prosecutor's presentation of rebuttal evidence, Pitts, protesting the fairness of the trial, pushed his chair away from the defense table and attempted to leave. Correctional offices resisted his efforts and a fight ensued. Tr. IV–17(b)–20(b). When trial resumed, it was in a different courtroom and Pitts was seated in the "prison box," not at counsel table, and his hands and feet were shackled. Tr. IV–20(b)–21(b). As described by defense counsel at the state post-conviction hearing, Pitts was sitting to counsel's left, about eight feet away. Counsel was able to hear Pitts if he called to him from there, but Pitts did not indicate any wish to confer with counsel. HTr. 108–09. Pitts contends in this proceeding that this arrangement denied him effective access to his counsel.

Pitts' Sixth Amendment right to be effectively represented by counsel was not violated under the circumstances at bar, where he was present at trial (albeit physically restrained) and able to communicate with his attorney. *See Illinois v. Allen*, 397 U.S. 337, 343–44, 351, 90 S.Ct. 1057, 1060–61, 1065, 25 L.Ed.2d 353 (1970); *United States v. Jones*, 766 F.2d 994, 1004 (6th Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985).

*Cruel and Unusual Punishment*

Pitts was convicted of ten counts of felony theft and five counts of misdemeanor theft. At the time he was charged, under 11 Del.Code Ann. § 841 (1987), felony theft was a class E felony, punishable by a fine and up to seven years imprisonment; misdemeanor theft was a class A misdemeanor, punishable by a fine and up to two years imprisonment. 11 Del.Code Ann. §§ 4205(b)(5), 4206(a) (1987).[14] In addition, as a condition to any sentence of imprisonment, the state court is statutorily authorized to direct the Department of Correction not to place a defendant on work release, supervised custody, or furlough. 11 Del.Code Ann. § 4204(k) (1987). Pitts was sentenced to consecutive terms of two

**14.** Sections 841, 4205 and 4206 were subsequently amended in 1989. *See* 11 Del.Code Ann. §§ 841, 4205(b)(5), 4206 (1990).

years on each felony count and one year for each misdemeanor count, for a total of 25 years, and the Superior Court imposed the § 4204(k) condition on all of the sentences. Pitts contends here that the § 4204(k) condition constitutes cruel and unusual punishment.

The Eighth Amendment ban on cruel and unusual punishment requires that sentences not be disproportionate to the severity of the crime and not involve an unnecessary infliction of pain. Within that limitation, the determination of the proper penalty for an offense is a matter for the legislature, and a sentence that is within the statutory limits does not violate the Eighth Amendment. *United States v. Gourley*, 835 F.2d 249, 252–53 (10th Cir. 1987), *cert. denied*, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *United States v. Lee*, 532 F.2d 911, 916 (3d Cir.), *cert. denied*, 429 U.S. 838, 97 S.Ct. 109, 50 L.Ed.2d 105 (1976). The record at bar demonstrates that Pitts' sentences are within the statutory limits; thus, the actual length of the sentences does not amount to cruel and unusual punishment.

Neither does the deprivation of work or educational opportunities pursuant to the § 4204(k) condition violate the proscription against cruel and unusual punishment. The "Constitution does not require that every aspect of prison discipline serve a rehabilitative purpose." *Hutto v. Finney*, 437 U.S. 678, 686 n. 8, 98 S.Ct. 2565, 2571 n. 8, 57 L.Ed.2d 522 (1978). *See also Atiyeh v. Capps*, 449 U.S. 1312, 1314, 101 S.Ct. 829, 830, 66 L.Ed.2d 785 (1981). *Cf. Sample v. Diecks*, 885 F.2d 1099, 1108–09 (3d Cir.1989). Under the circumstances at bar, where the record indicates that Pitts committed the 1982 thefts while he was on work release or supervised custody following a previous conviction for similar offenses,[15] the sentence imposed is not violative of the Eighth Amendment.

*Inconsistent Verdicts*

Pitts was charged with multiple counts of third degree burglary, based on his alleged entry into a number of businesses and stores with the intent to commit theft. He was also charged on corresponding counts of theft, based on his actual theft of property. The jury acquitted him of all the burglary counts and convicted him of all but one of the alleged thefts. Pitts contended in the state courts that the verdict was inconsistent. Relying on *Alston v. State*, 410 A.2d 1019 (Del.1980), the state courts rejected his argument. Because burglary and theft are based on different statutes with distinctly different elements, acquittal of burglary is neither legally nor logically inconsistent with conviction for theft. Pitts now reiterates his claim that the acquittal for burglary is inconsistent with the conviction for theft.

We reject Pitts' claim for the same reasons cited by the state courts, and at the same time note that "[i]nconsistency in a verdict is not [always] a sufficient reason for setting it aside." *Harris v. Rivera*, 454 U.S. 339, 345, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981). *See also United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984); *United States v. Uzzolino*, 651 F.2d 207, 213 (3d Cir.), *cert. denied*, 454 U.S. 865, 102 S.Ct. 327, 70 L.Ed.2d 166 (1981).

*Insufficiency of Evidence*

Pitts next contends that there is insufficient evidence to support his convictions for felony and misdemeanor theft. He is entitled to federal habeas relief only if, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the prosecution, no rational trier of fact could have found the elements of the offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Under 11 Del.Code Ann. § 841, a person commits theft "when he takes, exercises control over or obtains property of another person intending to deprive him of it or appropriate it." *See* 11 Del.Code Ann. § 857 (definition of deprive, appropriate, obtain); Tr. IV–67(b)–69(b). Based on the discovery, at the South Mechanic Street house and in the two cars, of stolen proper-

---

**15.** Tr. III–96(a)–97(a), 103(a), 204(a), 230(a)– 31(a).

ty from all of the burglaries, the jury could decide that Pitts had taken or was exercising control over the property and could further infer that he had participated in the various thefts. 11 Del.Code Ann. § 306(c)(2) (1987). *See Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Government of Virgin Islands v. Greene*, 708 F.2d 113, 115 (3d Cir.1983), *cert. denied*, 465 U.S. 1008, 104 S.Ct. 1004, 79 L.Ed.2d 236 (1984). That conclusion is buttressed by the statement his brother made to the police that the property in the house and parked car belonged to Pitts, by Pitts' efforts to sell items out of his trunk, and by his failure to advance any credible explanation of his possession of such property. *See Rugendorf v. United States*, 376 U.S. 528, 536–37, 84 S.Ct. 825, 830, 11 L.Ed.2d 887 (1964). Consequently, a rational juror could find each of the elements of theft beyond a reasonable doubt and Pitts is not entitled to habeas relief on this ground.

*Lack of Impartial Jury*

Pitts next complains that he was deprived of an impartial jury. More specifically, Pitts alleges that there were newspaper articles about his case before and during his trial, that there were many jurors in the array who knew people associated with the case or knew something about the case, and that the trial judge did not ask the prospective jurors whether they could reach a fair decision regardless of their knowledge of the case or witnesses. D.I. 2, 16, 17; HTr. 24–26, 35–36.

The Sixth Amendment guarantees a criminal defendant the right to be tried "by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). That standard, however, does not require that

> the jurors be totally ignorant of the facts and issues involved.... To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to

rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Id.* at 722–23, 81 S.Ct. at 1642–43. *Accord Patton v. Yount*, 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 2891–92 n. 12, 81 L.Ed.2d 847 (1984); *Dobbert v. Florida*, 432 U.S. 282, 303, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977); *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975); *Martin v. Warden, Huntingdon State Correctional Institution*, 653 F.2d 799, 806–07 (3d Cir.1981), *cert. denied*, 454 U.S. 1151, 102 S.Ct. 1019, 71 L.Ed.2d 306 (1982). It is Pitts' burden to rebut the presumption of a juror's impartiality by directing the court to

> specific portions of the record, in particular, the *voir dire* examination of the jurors, which would require a finding of constitutional unfairness as to the method of jury selection or as to the character of the jurors actually selected.... [U]nder *Murphy*, extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair.

*Dobbert*, 432 U.S. at 303, 97 S.Ct. at 2303. *See also Wells v. Murray*, 831 F.2d 468, 472 (4th Cir.1987).

■ Pitts has failed to do any more than make conclusory allegations, both in the instant proceeding and in the state post-conviction evidentiary hearing.[16] Consequently, he has failed to carry his burden of demonstrating that his trial was constitutionally unfair by reason of a biased jury.

*Illegal Search/Ineffective Assistance of Counsel*

The Magistrate's treatment of Pitts' claim of illegal arrest and search in Points Eight and Twelve needs additional clarifica-

---

16. The record indicates that the judge conducted routine *voir dire*, HTr. 88–89, and properly instructed the jurors throughout the trial as to their responsibilities to focus on the evidence presented at trial. Tr. I–51, 114, 169, 190; Tr. II–62(a), 124(a); Tr. III–160(a), 266(a); Tr. IV–87(b).

tion. Pitts alleges that his arrest and the search of his home and cars violated the Fourth Amendment; further, that trial counsel's failure to file suppression motions at trial amounted to ineffective assistance of counsel.

After *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), federal courts will not rule on alleged Fourth Amendment search and seizure violations except through the vehicle of ineffective assistance of counsel. *See Kimmelman v. Morrison,* 477 U.S. 365, 373, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986) (Fourth and Sixth Amendment claims are "distinct;" Sixth Amendment ineffective assistance claim may be brought, despite Fourth Amendment underpinning, where failure to file a suppression motion is the "primary manifestation of incompetence and source of prejudice"); *Gilmore v. Marks,* 799 F.2d 51 (3d Cir.1986) (Fourth Amendment claims litigated below are precluded from federal habeas review), *cert. denied,* 479 U.S. 1041, 107 S.Ct. 903, 93 L.Ed.2d 853 (1987). *Cf. United States ex rel. Petillo v. New Jersey,* 562 F.2d 903, 906 (3d Cir.1977) (on federal habeas review of a Fourth Amendment claim, a court may only inquire into whether petitioner was "given an opportunity for full and fair state court litigation" of the claim) (emphasis omitted). To make a successful ineffective assistance of counsel claim, a plaintiff must show first that

his attorney's behavior was objectively unreasonable, and second that this unreasonable behavior prejudiced the trial result. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). For Fourth Amendment allegations this means that but for attorney error the evidence in question would have been suppressed.

■ In this case, a post-conviction hearing was held specifically to address the effectiveness of Pitts' counsel. From the record of this hearing, trial counsel's decision not to file suppression motions at trial cannot be said to be objectively unreasonable.[17] Counsel reviewed police reports and developed trial strategy with Pitts based on *Pitts'* disavowal of any relationship to the searched house and one of the cars.[18] *See* HTr. 84–88, 90–93. Pitts himself, truthfully or not, thus undermined his own standing to challenge the search of those two properties. Certainly, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. *Cf. Moore v. Deputy Commissioners of S.C.I.,* 946 F.2d 236 at 246 (3d Cir.1991) (trial counsel were not constitutionally deficient where they made "a

---

17. Though the state trial court found in a post-conviction hearing that Pitts' defense had not been ineffectively conducted, and these findings were confirmed by the state supreme court, *Pitts v. State,* 549 A.2d 699 (Del.1988), we review the record anew. As the Supreme Court has noted, In a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d) [Rules Relating to Habeas Petitions]. Ineffectiveness is not a question of 'basic, primary, or historical fact.' ... Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d), and although district court findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a), both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070.

18. As his trial attorney testified at the post-conviction hearing:

Q. As regards the search warrant at the home, were you concerned about whether the defendant not regarding the merit of the attack on the search warrant, but his standing to attack that warrant?

A. Well, the search warrant at the residence, at the home was the residence of his father and Mr. Pitts had told me he didn't live there. I mean, that was part of our whole defense is that any items seized from that house were irrelevant. He didn't even live in that residence. He was living in Dover with his girlfriend and so my opinion at the time was there was no standing to challenge a search being done at that location since he didn't even live there.

Q. And add to the vehicle that was in front of the home, the same?

A. The same.

HTr. 91–92.

conscious determination of how to proceed."). Further, there is no evidence in the record that the stop and investigation of the parking violation was fictitious, or that the evidence used to secure the search warrants was illegally obtained. If the attorney had filed the suppression motions, their frivolity would have been exposed at trial if Pitts denied any affiliation with the searched properties. *See* HTr. 96, 98–100.

■ Even if Pitts could have shown his attorney's actions to be objectively unreasonable, he would be hard pressed to show prejudice to the trial. From the record, it appears that the evidence used to secure the search warrant of Pitts' car was in plain view. *See* Sept. 15, 1982, Warrant Affidavit, paras. 6–8, 13. After uncovering evidence known to be stolen, it appears that the police had probable cause to secure search further warrants for the address listed on Pitts' license and car registration. *See* Sept. 16, 1982, Warrant Affidavit, paras. 1–4. Thus, the exclusionary rule would not apply to anything introduced at trial; nothing would have been suppressed. Pitts fails both prongs of the *Strickland* test, and accordingly his mixed Fourth and Sixth Amendment ineffective assistance of counsel claim cannot succeed as a basis for habeas relief.

### Judicial Bias

Pitts next contends that various of his comments directed at the trial judge during the presentation of rebuttal evidence necessarily biased the judge and disqualified him from presiding over the remainder of the trial. Tr. IV–17(b)–25(b) (comments). As evidence of the judge's bias, Pitts claimed in the state courts that the trial judge had denied various defense motions. HTr. 62.

■ A defendant's contemptuous remarks do not, as a matter of law, require a judge to then recuse himself. *Mayberry v. Pennsylvania,* 400 U.S. 455, 463, 91 S.Ct. 499, 504, 27 L.Ed.2d 532 (1971); *Ungar v. Sarafite,* 376 U.S. 575, 584–86, 84 S.Ct. 841, 847–48, 11 L.Ed.2d 921 (1964). Indeed, "to permit such an attack to cause a new trial before a new judge would encourage unruly courtroom behavior and attacks on the trial judge and would greatly disrupt judicial administration." *Wilks v. Israel,* 627 F.2d 32, 37 (7th Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981).

■ A review of the trial record reveals no animosity toward Pitts on the part of the trial judge. The fact that the judge ruled adversely to the defense on various motions or objections does not establish any bias, regardless of the correctness of the decisions. *United States v. Gallagher,* 576 F.2d 1028, 1039 (3d Cir.1978). Pitts has not shown any actual prejudice held against him by the trial judge; he, therefore, is not entitled to habeas relief on this ground.

### Disruption of Trial

Pitts' next contention is that the members of the jury panel saw or heard the altercation between Pitts and various correctional officers during the presentation of rebuttal evidence. Defense counsel moved for a mistrial; the motion was denied. Tr. IV–17(b)–26(b). Defense counsel, however, did not request a curative jury instruction or a judicial inquiry as to the effect of the incident on the jury. The rebuttal stage of the trial was concluded by the presentation of two more witnesses.

■ When a request for a mistrial is grounded on a disruptive incident during trial, the applicable inquiry is whether the incident so prejudiced the jury that the defendant could not obtain a fair trial. *United States v. Evans,* 542 F.2d 805, 815 (10th Cir.1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977). In Pitts' case, the trial judge neither inquired of the jury whether the disruption had any effect on them nor instructed them to disregard the incident. However, the jury was instructed at the conclusion of trial, shortly after the incident, to base the verdict only on the evidence in the case. Tr. IV–61(b). *See United States v. Chaussee,* 536 F.2d 637, 640–41 (7th Cir.1976). Moreover, the verdict indicates that despite the disruption, the jury reviewed the charges against Pitts carefully; he was acquitted of

all burglary charges and one theft charge. *See Evans*, 542 F.2d at 815. Finally, the trial judge was not required to let Pitts succeed, through his own obstreperous behavior, to prematurely end the trial. To have declared a mistrial, the trial judge would have given Pitts exactly what he had repeatedly demanded, a new trial (or series of trials). Clearly the Constitution does not compel such a result. *Illinois v. Allen*, 397 U.S. at 349–50, 90 S.Ct. at 1064 (1970) (Brennan, J., concurring).

### Erroneous Reinstruction

On the afternoon of February 2, 1983, the jury was instructed by the judge and retired to deliberate. Tr. IV–3(b), 38(b), 87(b). The following morning, the jury sent a note asking the judge to read again the elements of burglary, theft, and receiving stolen property. Tr. IV–89(b). The trial judge did so, also telling the jury that the State had to establish elements of each offense beyond a reasonable doubt. Tr. IV–89(b)–97(b). Defense counsel asked that the jury also be reinstructed on the assessment of circumstantial evidence and reasonable doubt, but the trial judge denied the request. Tr. IV–97(b)–98(b).

According to Pitts, these omissions violated the due process clause. Pitts is entitled to relief only if the instructions, read as a whole, "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). In making that showing, Pitts must meet an especially heavy burden of proving that he was prejudiced because his claim is based on the failure to repeat proper instructions already given to the jury. *See Henderson v. Kibbe*, 431 U.S. 145, 154–55, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977). He has failed to meet this burden.

The trial judge's reference in the supplemental instructions to the reasonable doubt standard, when read in connection with the original instructions, was accurate and the trial judge was not required to do more. *See United States v. Parr*, 716 F.2d 796,

809–10 (11th Cir.1983); *United States v. Sanfilippo*, 581 F.2d 1152, 1154–55 (5th Cir.1978). The adequacy of the instructions as a whole is evidenced by Pitts' acquittal of all burglary charges and one count of theft. *See Bollenbach v. United States*, 326 U.S. 607, 612–14, 66 S.Ct. 402, 405–06, 90 L.Ed. 350 (1946). Pitts' claim cannot succeed on these facts.

### Ineffective Assistance of Trial Counsel

Pitts' next claim is a series of allegations of ineffective assistance of counsel. For him to prevail on this issue, he must establish: 1) that counsel's performance fell below an objectively reasonable standard; and 2) that there exists a reasonable likelihood that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Pitts' first allegation is that counsel did not investigate the facts surrounding his arrest and the police search of the house and cars. For the reasons stated above, counsel's conduct in this regard was objectively reasonable, and as noted, the evidence was not subject to suppression. Pitts, therefore, has shown no prejudice.

According to Pitts, counsel was allegedly ineffective because he told Pitts, ostensibly for purposes of plea negotiations, that the police had fingerprint evidence in the case when, in fact, there was no such evidence. Defense counsel testified in the state post-conviction proceeding that he reviewed all the police reports with Pitts and did not recall making any such statement to his client. HTr. 88. Since Pitts chose to proceed to trial, counsel's alleged statement had no effect and, therefore, Pitts cannot demonstrate any prejudice.

Next, Pitts asserts that counsel did not provide him with a copy of the trial transcript for use in preparing for the direct appeal to the Delaware Supreme Court. His lack of access to a transcript, however, did not prevent him from raising numerous issues on direct appeal, issues which he has essentially repeated for purposes of both his state and federal post-conviction proceedings, despite now having

a copy of the trial transcript. Pitts, therefore, has not shown any prejudice. *See United States ex rel. Buford v. Henderson,* 524 F.2d 147, 151 (2d Cir.1975), *cert. denied,* 424 U.S. 923, 96 S.Ct. 1133, 47 L.Ed.2d 332 (1976).

Pitts also claims that his attorney did not ask the judge to reinstruct the jury on circumstantial evidence and the reasonable doubt standard when the jury asked to clarification of the elements of the offenses. Contrary to Pitts' assertions, counsel did make such a request and objected to the trial judge's failure to give the requested instructions. Tr. IV–97(b).

■ Pitts' last contention is that his attorney withdrew a motion for judgment of acquittal when he discovered a Delaware Supreme Court decision, *Alston v. State,* 410 A.2d 1019 (Del.1980), that expressly rejected the defense position of inconsistent verdicts. Because counsel's action in revealing the existence of *Alston* was required by professional responsibility rules, Del.R.Prof.Conduct 3.3(a)(3) (1985) and Del.R.Prof.Conduct DR7–106(B)(1) (1971), counsel's actions were objectively reasonable. *See Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065.

*Ineffective Assistance of Post–Conviction Counsel*

■ Pitts' final contention is that the attorney who represented him in the state post-conviction proceedings provided inadequate assistance. Because the adequacy of counsel in state post-conviction actions is not guaranteed by the federal Constitution, this allegation presents no federal issue for purposes of federal habeas relief. *See Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987); *Tillett v. Freeman,* 868 F.2d 106, 107–08 (3d Cir.1989).

## IV. CONCLUSION

For the above-stated reasons, we will deny Pitts' petition for federal habeas corpus relief.