**GOVERNMENT OF the
VIRGIN ISLANDS**

v.

**JAMES, Irving, Appellant.**

No. 89–3757.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Rule 12(6)
December 7, 1990.

Decided May 30, 1991.

Andrea Smith, Asst. Federal Public Defender, Charlotte Amalie, St. Thomas, U.S. V.I., for appellant.

Richard K. Harris, Asst. U.S. Atty., Office of the U.S. Attorney, Charlotte Amalie, St. Thomas, U.S. V.I., for appellee.

Before GREENBERG, COWEN and HIGGINBOTHAM,[1] Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Senior Circuit Judge.

Irving James appeals his conviction for first degree robbery and possession of an unlicensed firearm in the District Court of the Virgin Islands. Appellant claims that his Sixth Amendment right to assistance of counsel was unconstitutionally infringed upon when he was allowed to represent himself at trial without being fully apprised of the dangers of doing so. The appeal is from the district court's final order and judgment of commitment. This court has jurisdiction pursuant to 28 U.S.C. § 1291. Because we find that James knowingly and intelligently waived his right to counsel, we will affirm the district court's order and judgment of commitment.

### I. Background

On May 27, 1989, James was arrested in connection with the assault and robbery of Donald Riley in the parking lot of the Ramada Hotel in St. Thomas, Virgin Islands. On June 7, 1989, he was arraigned on a five-count information that charged him with 1) robbery in the first degree in violation of 14 V.I.C. § 1862(2); 2) assault in the first degree in violation of 14 V.I.C. § 295(3); 3) grand larceny in violation of 14 V.I.C. § 1083(1); 4) possession of an unlicensed firearm during the commission of a crime of violence in violation of 14 V.I.C. § 2253(a); and 5) possession of stolen prop-

---

1. Honorable A. Leon Higginbotham, Jr., was Chief Judge at the time of oral argument but assumed Senior Judge status on February 1, 1991.

erty in violation of 14 V.I.C. § 2101(a). A Public Defender, Thurston McKelvin, was appointed to represent Mr. James and did so through the pre-trial proceedings up until the jury selection on the day of trial, July 24, 1989. On that day, James appeared before the court with Mr. McKelvin and expressed his desire to discharge his court-appointed counsel and represent himself at trial. Before granting appellant's request to proceed *pro se,* the trial judge ascertained that James did not wish to accept the plea bargain offer made by the government and engaged in a lengthy discussion with James about the perils of self-representation.[2] Following the trial, during which James was allowed to represent himself, the jury returned a verdict of guilty on the first degree robbery and possession of an unlicensed firearm charges. On November 10, 1989, James was sentenced to fifteen years imprisonment for the robbery count and eight years for the firearm possession count, the sentences to be served consecutively. On August 10, 1989, appellant filed a timely *pro se* notice of appeal. By order of this court, dated November 29, 1989, a Federal Public Defender was appointed to represent appellant on appeal.

## II. Discussion

The question presented by this appeal is whether the trial court's colloquy was sufficient to ensure that James' waiver of counsel was voluntary, knowing and intelligent. The Sixth and Fourteenth Amendments guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment. *See Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). This constitutional right also includes the converse guarantee that a defendant has the right to waive the assistance of counsel and proceed *pro se* when he voluntarily and intelligently elects to do so. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975). Because of the dangers and disadvantages inherent in defending oneself, it is an absolute requirement that a defendant's waiver of his right to assistance of counsel is a voluntary, as well as knowing and intelligent relinquishment or abandonment of a known right or privilege. *See Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981) (citations omitted).

As this court has explained previously, if on the eve of trial, a defendant seeks new counsel or, in the alternative, seeks to represent himself, the district court must engage in two lines of inquiry. *McMahon v. Fulcomer,* 821 F.2d 934, 942 (3d Cir.1987); *United States v. Welty,* 674 F.2d 185, 187–88 (3d Cir.1982). First, the court must decide if the reasons for the defendant's request for substitute counsel constitute good cause and are sufficiently substantial to justify a continuance of the trial in order to allow new counsel to be obtained. *Id.* This should involve at least some inquiry as to the reason for defendant's dissatisfaction with his existing attorney. *Id.* Following such inquiry, if the court determines that good cause for substitution of counsel does not exist, the defendant then is left with the choice of continuing with existing counsel or proceeding to trial *pro se. Id.*

In the instant case, the trial court was not presented with a request to be allowed to obtain substitute counsel;

---

**2.** James was also required to execute a waiver form attesting that the waiver was voluntarily made with full knowledge and understanding:

I, IRVING ISAAC JAMES having been fully advised by the Court of my rights to counsel and that because of my indigence counsel will be appointed to represent me in this criminal case at no cost to me whatsoever; and fully understanding the nature of the charges against me, and the possible penalties upon conviction of these charges, the Court having explained the same to me, with full knowledge and understanding of all the foregoing hereby request that the Federal Public Defender's Office heretofore assigned to represent me, be relieved of such assignment, and I freely and voluntary [sic] waive my rights to counsel.

James sought only to be allowed to defend himself.[3] This did not remove the district court's burden to make, at least, a minimal inquiry as to the basis for James' objection to counsel. We find, in this case, that the district court's inquiry was sufficient to determine the reasons for James' dissatisfaction and that good cause for substitution of counsel did not exist. During the pretrial colloquy, James expressed the view that his counsel exhibited a lack of enthusiasm about his case and that he believed that "counsel is quite inadequate in dealing with the issues of my case." The court explained to James that the nature of the charges and penalties against him were "very, very serious." (App. at 13). The court also informed James of counsel's qualification to represent him:

> COURT: Now, you understand you have a right to have Mr. McKelvin represent you. He is with the Public Defender's Service and he is a very capable lawyer and has appeared in court numerous times and tried numerous cases. He has had some very good results. But I understand that you want him terminated and you are prepared to proceed on your own, is that correct.
>
> JAMES: Yes, sir.

(App. at 14). At no point during the colloquy did James advance any reason that might have constituted good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict with his attorney. *See Welty*, 674 F.2d at 188. The district court was correct in finding that James' judgment as to his counsel's abilities and enthusiasm, standing alone, did not constitute good cause to justify a continuance to obtain substitute counsel and was, therefore, correct in proceeding to determine whether James should be allowed to represent himself.

█ The second line of inquiry that a district court must engage in before granting or denying a defendant's request to proceed *pro se* is whether the appellant's decision to represent himself was intelligently and competently made and whether he was aware of the dangers of self-representation. *Welty*, 674 F.2d at 188. It is without question that

> when an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.... Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'

*Id.* (quoting *Faretta v. California*, 95 S.Ct. at 2541). "The mere 'fact that an accused may tell [the court] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility.' " *Id.* at 189 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (plurality opinion)). "To be valid [a defendant's] waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Id.* at 188–89 (quoting *Von Moltke*, 68 S.Ct. at 323). "A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances," *id.* at 189 (quoting *Von Moltke*, 68 S.Ct. at 323), and only after bringing home to the defendant the perils he faces in dispensing with legal representation. *Id.* (citing *Johnson v. Zerbst*, 304 U.S. at 465, 58 S.Ct. at 1023 (1938)). This inquiry and the determination as to whether there has been a proper waiver should appear on the record. *Id.*

█ Our review of the instant record indicates that the trial court conducted a lengthy colloquy with James about the perils of self-representation in order to ensure that the waiver was knowing and intelli-

---

**3.** The record does not indicate whether James had the resources to hire a private attorney.

gent.[4] After admonishing appellant with the old adage that a lawyer who has himself for a client is a fool, the court discussed the nature of the possible charges against James and the possible penalties he faced;[5] James was apprised of the difficulty he would face in getting his decision to waive overturned on appeal from a conviction;[6] the court determined that James had some familiarity with the workings of a trial as a result of two prior convictions;[7] the court also determined that James' waiver was voluntary.[8] In addition, the court ensured that James understood the nature of the government's plea offer. The trial judge explained the terms of the offer to James under which he would have received a maximum of ten years in comparison to the maximum life sentence.[9] Most signifi-

4. This communication stands in stark contrast to the communication that took place in both *McMahon* and *Welty*. In those cases, the records indicated that the respective trial courts had conducted little or no inquiry to ensure that the defendants had properly waived their right to counsel. Accordingly, in those cases, we held that the defendants had not effectively waived their sixth and fourteenth amendment rights in those cases.

5. THE COURT: Let me start by saying, have you ever heard of an old adage that a person who has himself for a lawyer is a fool?
 JAMES: For a client, yes, sir.
 THE COURT: You know better than I do and that's what I'm concerned about, that you are not in that situation, because the charges the Government brought against you are very, very serious and the penalties are very, very serious. And if you are convicted, you could go to jail on a life imprisonment sentence.
 Do you understand that?
 JAMES: I'm perfectly aware of that, sir. But I'm left with no recourse simply because of Mr. McKelvin's lack of enthusiasm with my case.
 THE COURT: Well, that's your judgment to me. I'm just concerned that you know what you are doing and you are doing it with full knowledge of what the consequences of the charges are and what I'm talking to you about, what the consequences of representing yourself are. Okay?
 JAMES: Yes, sir.
 (App. at 12–13).

6. THE COURT: I'm concerned that you not be led down some path and have no recourse later, which is, I think, the case. Normally, when someone has their counsel fired, then they try to complain about their counsel being fired after they have been convicted, and it's very difficult to get those decisions overturned. Do you understand what I'm saying?
 JAMES: I'm perfectly aware of that, sir.
 (App. at 13).

7. THE COURT: You have been convicted before, so you have been around the system a little bit.
 JAMES: Yes, sir.
 THE COURT: Have you had trials before?
 JAMES: I have never personally represented myself, but I thin[k] that counsel is quite

inadequate in dealing with the issues of my case, and this is why I'm forced to represent myself, being perfectly aware of the consequences.
 THE COURT: Have you ever been to a trial before?
 JAMES: Yes, sir, twice.
 THE COURT: Were you convicted?
 JAMES: Yes, sir.
 THE COURT: So you know how a trial works?
 JAMES: Certainly, sir.
 THE COURT: Do you know what goes on at a trial?
 JAMES: Yes, sir.
 (App. at 13–14).

8. THE COURT: You understand that Mr. McKelvin is ready and willing and able to represent you here today?
 JAMES: Yes, sir. I understand.
 THE COURT: Do I understand this is your own choice, made of your own free will, and done voluntarily? No one is giving you advice to fire Mr. McKelvin. No one is forcing you to fire Mr. McKelvin?
 JAMES: No, sir.
 (App. at 15).

9. THE COURT: ... [I]f you were to choose to plead guilty ... before I accepted your plea, I would tell you what the sentence was going to be. So you would know what the sentence was, ... not only what the maximum was, you would know what I was going to give you. And if you didn't like it, ... you wouldn't have to plead guilty. Do you understand what I'm saying to you?
 JAMES: Yes, sir.
 THE COURT: For instance. Let's assume that you could get up to forty years and I would say, Mr. James, if you plead guilty, I have listened to the Government's recommendation of up to ten years, I have listened to your lawyer, Mr. McKelvin, [and] I'm going to give you five years. Do you want to plead guilty? Now, then you could say, yes or no. Okay?
 JAMES: Yes, sir.
 THE COURT: Now, as I understand it, you don't want to partake in this plea bargain?
 JAMES: Your Honor, I think that would be a betrayal to my conscience, because I never did the crime in the first place.

cantly, the court did not allow James to proceed completely unassisted but appointed stand-by counsel to sit with him and answer any questions that he may have had during trial.[10] Our review of this record does not leave us with any question but that James dispensed of his right to legal representation with full apprehension of the risk that he was undertaking in representing himself.

 James contends that the court's colloquy was insufficient to ensure that his waiver was knowing and intelligent because it failed to advise him of the technical problems he would encounter in acting as his own attorney. He asserts that his waiver was not knowingly or intelligently made because the district court

> failed [to] tell him that he would have to conduct his defense in accordance with [the] Federal Rules of Evidence and Criminal Procedure, failed to tell Appellant that he would possibly be hampered in presenting his best defense by his lack of knowledge of the law, failed to tell Appellant that his effectiveness in presenting his defense would possibly be diminished by his dual role as attorney and accused, failed to tell Appellant of the possible defenses to the charges and the circumstances in mitigation thereof.... (James Br. at 9–10).

The Supreme Court has not defined precisely the extent of a valid *Faretta* colloquy. *See United States v. Moya–Gomez*, 860 F.2d 706 (7th Cir.1988). The Court's most recent statement on the issue of waiver of counsel simply emphasized the need for strict safeguards before permitting a defendant to waive his right to counsel.[11] In *Welty* and *McMahon* we set forth this Circuit's view on the requirements of a proper waiver of counsel colloquy. We ex-

plained that in order to ensure that a defendant truly appreciates the dangers and disadvantages of self-representation, a district court "should advise [the accused] in unequivocal terms both of the technical problems he may encounter in acting as his own attorney and of the risks he takes if his defense efforts are unsuccessful." *McMahon,* 821 F.2d at 945 (quoting *Welty,* 674 F.2d at 188). We gave as an example of what a trial court should say to a defendant who has expressed the desire to represent himself:

> [t]he district court judge should tell the defendant, *for example*, that he will have to conduct his defense in accordance with the Federal Rules of Evidence and Criminal Procedure, rules with which he may not be familiar; that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; and that the effectiveness of his defense may well be diminished by his dual role as attorney and accused.

*Welty,* 674 F.2d at 188 (emphasis added). *See McMahon,* 821 F.2d at 945. These examples of what a trial court should say were never intended to serve as a rote dialogue, in the absence of which, a defendant's waiver of counsel would be *per se* invalid. While it is unquestionable that a colloquy between the defendant and trial judge is the preferred method of ascertaining that a waiver is voluntary, knowing and intelligent, we have explicitly declined to require a detailed list of advice such as that mandated for guilty plea proceedings conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure. *Welty,* 674 F.2d at 189. Rather, the proper measurement of the effectiveness of a defendant's waiver of counsel is whether the district court judge has made "a searching inquiry

(App. at 18–19).

(App. at 15).

**10.** THE COURT: I'm going to order Mr. McKelvin to stand by. In other words, to sit at counsel table with you and assist you, so that if you have any questions, he can—although I know you have been through the process before. But you may have a question as this goes on and he'll be available to give you whatever help he can in a legal sense.
JAMES: That will be greatly appreciated.

**11.** "[R]ecognizing the enormous importance and role that an attorney plays at a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him [to] waive his right to counsel at trial." *Patterson v. Illinois*, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261 (1988).

sufficient to satisfy him that the defendant's waiver was understanding and voluntary." *Id.* As we noted in *Piankhy v. Cuyler,* the question of whether a waiver is voluntary, knowing and intelligent, "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Piankhy,* 703 F.2d 728, 730 (3d Cir.1983) (*quoting Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). Based on the particular facts and circumstances surrounding this case, it is evident that the trial court properly ascertained that the defendant had a sufficient understanding in order for the waiver to be valid. Although James had never represented himself before, he had been tried and convicted twice and expressed to the court that he was familiar with trial proceedings. Following trial, James' educational background and performance in court led the trial court to observe

> ... Mr. James, you come from a very good family, and I think being a product of that family, you are very well educated. Your performance in the courtroom during the course of your trial, in my experience as a trial attorney ... and as a trial judge, would put you probably in the top ten percent of the lawyers. That's how good you are. (App. at 24).

In view of these particular facts and circumstances and the trial court's extensive colloquy in which the defendant was strongly admonished not to represent himself, we can reach no other conclusion but that the trial court was entirely correct in concluding that James' waiver was knowing and intelligent. The judgement of the district court is hereby affirmed.