Sylvester GORDON, Petitioner,

v.

Stanley W. TAYLOR, Acting Warden, et al., Respondents.

Civ. A. No. 91–566 LON.

United States District Court, D. Delaware.

June 9, 1993.

---

Sylvester Gordon, pro se.

Loren C. Meyers, Dept. of Justice, Wilmington, DE, for respondents.

## OPINION

LONGOBARDI, Chief Judge.

The petitioner, Sylvester Gordon ("Gordon"), brings this *pro se* petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 on the ground that the record of his state court trial fails to establish that he effectively waived his Sixth Amendment right to counsel when he elected to represent himself. Gordon has presented this claim to the Delaware Supreme Court and thus has exhausted state remedies. *See Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978). For the reasons that follow, the Court determines that Gordon is not entitled to relief and denies the petition.

## I. BACKGROUND

On June 13, 1989, Gordon was convicted by a Delaware Superior Court jury of two counts of delivery of marijuana, one count of fraudulent delivery of a non-controlled substance and one count of second degree con-

spiracy. Because of his prior record of multiple convictions, Gordon was sentenced to a life imprisonment term under Delaware's habitual offender statute, 11 Del.C. § 4214.

The charges against Gordon resulted from an undercover operation conducted by the Wilmington and Dover Police Departments. A police officer with the Dover Police Department, acting in an undercover role, met Gordon and established a relationship with him over a period of time. During this period, Gordon, at the undercover officer's request, secured marijuana from a third party and sold it to the officer. Gordon further agreed to introduce the officer to a third party who would sell cocaine directly to the officer. After that effort failed, Gordon arranged a sale of counterfeit drugs from another third party to the undercover officer. Based on these activities, Gordon was indicted. Upon Gordon's direct appeal, the Delaware Supreme Court affirmed the convictions. *Gordon v. State,* 599 A.2d 412 (Del. 1991).

During his pre-trial proceedings, Gordon was represented successively by two assistant public defenders. Gordon's second public defender, Richard Baumeister ("Baumeister"), represented him until the completion of jury selection on May 8, 1989, the then latest of successive dates scheduled for Gordon's trial.[1] Gordon insisted that each of his counsel rely upon the defense of entrapment. Both counsel attempted to discourage Gordon from pursuing the entrapment defense because it required the implicit admission that he committed the offenses and it was counsels' belief that such a defense stood little chance of success.

Before jury selection began that day, Baumeister advised the presiding Delaware Superior Court judge that Gordon wished to represent himself at trial. After jury selection was completed, the judge held a hearing to consider Gordon's application to proceed *pro se.* At the hearing, during a colloquy conducted outside of the presence of the prosecutor, Gordon told the judge that he wanted to present an entrapment defense,

---

1. Apparently, Gordon's case had been scheduled for trial four times prior to May 8, 1989, when it again was scheduled for trial. *See* D.I. 4.

but his trial counsel had insisted that such a defense would be unavailing. Gordon informed the judge that he wished to represent himself because he was dissatisfied with counsel's unwillingness to present an entrapment defense. Gordon also told the judge that he did not have any confidence that his counsel would forcefully represent him.

After briefly describing his entrapment defense, Gordon referred to the state's intention to recommend to the court that if convicted Gordon be sentenced as a habitual offender. In response, the judge stated he understood that based on Gordon's previous convictions, if Gordon were to be convicted of two counts of delivery of marijuana, the court would have no discretion in sentencing under the habitual offender statute and would be required to impose a mandatory life sentence. The judge also discussed the state's outstanding plea offer for conviction of a lesser count which, if accepted by Gordon, permitted the court some discretion in his sentence under the habitual offender statute. The judge informed Gordon that a conviction on the charge of fraudulent delivery and nothing else would give the court the choice of a life imprisonment sentence or something less. Gordon acknowledged that he was aware of the nature and severity of the circumstances facing him related to his potential convictions.

Baumeister then told the judge that he had advised Gordon of the hazards and pitfalls involved in advancing an entrapment defense. From the record it appears that Baumeister and his predecessor gave Gordon detailed advice regarding his defense. According to Baumeister, both lawyers had also informed Gordon that, in their opinion, entrapment was not a viable defense. Gordon, however, had rejected their advice and told Baumeister that morning that he wanted to proceed *pro se.*

Gordon proceeded to provide detailed information to the judge about his entrapment defense, including which witnesses he wanted to call and the testimony he wanted to elicit from them. During this portion of the colloquy, the judge advised Gordon that the defense of entrapment required Gordon to admit that he committed the crimes charged in the first instance.[2] Gordon forcefully indicated that he understood. Gordon then told the judge that he was not prepared to go forward that day and asked for a continuance.

At this point, Gordon also reiterated his desire to represent himself. The judge informed Gordon he had a choice of either Baumeister representing him or he could represent himself. According to the judge, there was no basis to discharge Baumeister

2. In the federal courts, the decision of the United States Supreme Court in *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), is controlling on the issue of whether a criminal defendant raising the affirmative defense of entrapment must admit the commission of the crime. *Mathews* held that even if a defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment. *Id.* at 62, 108 S.Ct. at 886. Under *Mathews*'s express holding, therefore, a defendant charged with a federal crime is not required to admit the commission of the crime in order to raise an entrapment defense. The high courts of several states construing *Mathews* have held that *Mathews* was not decided on constitutional grounds and accordingly had no impact on state common and statutory law governing the defense of entrapment. *See Young v. State*, 308 Ark. 647, 651–52, 826 S.W.2d 814, 816 (1992); *State v. Soule*, 168 Ariz. 134, 135–36, 811 P.2d 1071, 1072–73 (1991) (en banc), *cert. denied*, — U.S. ——, 112 S.Ct. 888, 116 L.Ed.2d 791 (1992); *People v.*

*Gillespie*, 136 Ill.2d 496, 501–03, 145 Ill.Dec. 915, 917–18, 557 N.E.2d 894, 896–98 (1990). In those states, the defense of entrapment required the admission of the commission of the crimes for which the accused was tried. *See id.* Delaware's criminal code likewise requires the admission of the commission of the act charged. *See* 11 Del.C. § 432(a) (defense of entrapment as defined by the criminal code concedes the commission of the act charged). The Delaware courts have not passed on the question of whether *Mathews* abrogates that prong of the entrapment statute which requires the concession of the crime charged. Whether the trial judge in the instant case properly instructed Gordon that the entrapment defense required his admission of the charges against him is not material to this Court's decision, however, because on two separate occasions during the colloquy, Gordon declared that he planned to admit to the commission of the crimes. The trial judge thus gave Gordon appropriate warnings during the colloquy regarding the potential impact of such an admission if Gordon proceeded *pro se* and raised an entrapment defense at his trial.

and appoint substitute counsel.[3] After the previously-described events transpired, this colloquy took place:

THE COURT: Now before you even make the choice, you ought to think about whether you're competent to represent yourself, whether you're able to represent yourself effectively in court in front of a jury. You've told me about this entrapment defense, and it's not going to wash.

GORDON: Perhaps.

THE COURT: I mean maybe you can convince a jury you were entrapped, but it's not the kind of defense that's likely to succeed, and you first off have to start off with admitting that you're guilty.

GORDON: It's truthful, Your Honor.

THE COURT: That you committed it?

GORDON: I was lured into committing the act, and besides, I (sic) rather represent myself than have someone sitting up there vacant. He's wishing that I fall harder than I fall myself.

THE COURT: Okay, I will let you represent yourself, as long as you understand the implications of that. I will require that Mr. Baumeister be present in court to help you with the procedures, to give you assistance, but if you want to represent yourself and you know what that means, I'll grant your request.

After further discussion regarding Gordon's application for a continuance,[4] the following colloquy ensued:

THE COURT: Mr. Gordon, I'm going to allow the continuance. I'm going to also allow you to represent yourself. You still want to do that?

GORDON: Yes, sir.

THE COURT: I'm also going to have Mr. Baumeister continue to function to assist you.

\* \* \* \* \* \*

THE COURT: Mr. Gordon, the next trial date I'm going to have designated as mandatory. So you can be sure that you can go to trial on that basis. It's up to you to represent yourself. I don't think you should. I think you should accept Mr. Baumeister's service. If you don't want to, you don't have to, and I'll allow you to represent yourself.

GORDON: Thank you, sir.

THE COURT: If you change your mind, at any time, and decide that you want Mr. Baumeister again to represent you, number one, you let him know that in writing. You write him a letter and write a copy to the Court Clerk's Office. That way we'll know you want him to represent you, and you do that in ample time so he knows that.

Gordon's rescheduled trial began June 12, 1989, before a different Superior Court judge. Before the trial started, the presiding judge informed Gordon that although he was not an attorney, in conducting his own defense he would be required to comply with the rules. Throughout the trial proceedings, Gordon represented himself and Baumeister was present to assist Gordon as standby counsel.

## II. DISCUSSION

 Gordon's basis for federal habeas relief is that the judge failed to conduct a sufficient inquiry to determine if he had effectively waived his Sixth Amendment right to counsel at trial. The Sixth and Fourteenth Amendments guarantee that "no accused can be convicted and imprisoned unless

---

**3.** In fact, in making his application to represent himself before the trial judge, Gordon stated that the public defender initially appointed to represent him, David Lukoff, had carried on "numerous discussions [with Gordon] in preparation for [his] trial," related to his defense. Docket Item ("D.I.") 15, Transcript of May 8, 1989 Hearing in Delaware Superior Court, at 2. At no time did Gordon raise an inference that either counsel successively representing him had failed to prepare his defense or communicate with him regarding the same. Rather, Gordon's problem with his representation appears solely to have involved the issue of mounting an entrapment defense on his behalf. Gordon makes no contrary representations in the instant petition.

**4.** This portion of the hearing was held in the presence of the prosecutor as it dealt mainly with the issue of whether a continuance should be granted.

he has been accorded the right to the assistance of counsel." *Faretta v. California,* 422 U.S. 806, 832, 95 S.Ct. 2525, 2539, 45 L.Ed.2d 562 (1975) (citing *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)). It is well established, however, that the Sixth Amendment not only guarantees the right to have the assistance of counsel for the accused's defense, it also guarantees the accused's independent right of self-representation. *See Faretta,* 422 U.S. at 819–20 & n. 15, 95 S.Ct. at 2533–34 & n. 15; *Government of Virgin Islands v. James,* 934 F.2d 468, 470 (3d Cir.1991); *Pitts v. Redman,* 776 F.Supp. 907, 914 (D.Del.1991), *aff'd without op.,* 970 F.2d 899 (3d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 611, 121 L.Ed.2d 545 (1992). Further, a court may, even over objection of the accused, appoint standby counsel to aid the accused if and when the accused requests assistance. *Faretta,* 422 U.S. at 835–36 n. 46, 95 S.Ct. at 2541 n. 46 (citation omitted).

■ According to the *Faretta* Court, an accused may constitutionally invoke his right of self-representation under the Sixth Amendment, provided his invocation of the right constitutes a knowing and intelligent relinquishment of the right to the assistance of counsel for the accused's defense. The Court stated that

> [w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits.... Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (citations omitted). Moreover, the Third Circuit, following *Faretta's* dictates, has held that "[b]ecause of the dangers and disadvantages inherent in defending oneself, it is an absolute requirement that a defendant's waiver of his right to assistance of counsel is a voluntary, as well as knowing and intelligent relinquishment or abandonment of a known right or privilege." *James,* 934 F.2d at 470 (citing *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981)).

■ In order to exercise the right to self-representation, the accused must specifically demand to proceed *pro se. See Pitts,* 776 F.Supp. at 914–15. At that point, the trial judge must conduct a two-part inquiry. *James,* 934 F.2d at 470; *Pitts,* 776 F.Supp. at 919. The court must first determine the reasons for the accused's wish to change his representation. *James,* 934 F.2d at 470; *Pitts,* 776 F.Supp. at 919. If the court determines that good cause does not exist for appointing substitute counsel, the accused must then decide whether to proceed with counsel or proceed *pro se. James,* 934 F.2d at 470.

■ In the present case, the record reflects that after being informed that Gordon desired to represent himself by both Gordon and his counsel, the judge carefully considered the basis of Gordon's complaints about his appointed counsel and counsel's response. Gordon repeatedly stated that Baumeister was not enthusiastic about representing him and presenting Gordon's requested entrapment defense and that consequently, Baumeister was inadequate. In turn, Baumeister recounted his conversations with Gordon as well as Gordon's conversations with the assistant public defender first assigned to represent him. The judge explained to Gordon that because of his criminal record, Gordon was facing a mandatory life sentence. The judge and Baumeister also pointed out that through Baumeister's efforts, the State had extended a plea offer that morning to Gordon which could have limited his exposure under the habitual offender statute. Gordon, however, did not advance any reason that might have amounted to good cause to

replace Baumeister. *See James,* 934 F.2d at 471; *Pitts,* 776 F.Supp. at 917–19. Accordingly, the Superior Court judge correctly decided that there was no basis to discharge Baumeister and appoint substitute counsel. After this inquiry was completed, the record reflects that the judge properly gave Gordon the choice of proceeding with his present counsel or proceeding *pro se. See James,* 934 F.2d at 470.

■ The second line of inquiry the court must pursue "is whether the [accused's] decision to represent himself was intelligently and competently made and whether he was aware of the dangers of self-representation." *James,* 934 F.2d at 471 (citing cases). The validity of such a waiver is not, however, adjudged by any specific list of questions or "detailed listing of advice;" instead, a waiver is effective when the trial judge "has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary." *James,* 934 F.2d at 473–74; *United States v. Welty,* 674 F.2d 185, 189 (3d Cir.1982).

■ The trial judge in Gordon's case conducted a searching inquiry and correctly found a competent and valid waiver. In this action, as on direct appeal, Gordon concedes that he was aware of his right to counsel and that he affirmatively waived that right. D.I. 2 at 6 ("Gordon was aware of the charges that he faced, as well as the fact that the State intended to seek sentencing as a 'habitual offender,' which carried the possibility of a life sentence upon conviction at trial[;] . . . [t]he record also reflects that Gordon was aware that he had a right to counsel and that he affirmatively desired to waive that right.") The judge was made aware of the fact that Gordon had familiarity with the workings of a trial because of his prior convictions. Fur-

ther, the judge discussed with Gordon the likelihood that he would not succeed if he represented himself and presented his version on the entrapment defense. In fact, the judge strongly cautioned Gordon numerous times against proceeding *pro se* and pressing the entrapment defense, and vigorously urged Gordon, that if at any time he changed his mind, his counsel would resume Gordon's representation. Finally, the judge directed Baumeister to remain in the case and assist Gordon during trial if necessary. Based on this record, there can be no question "but that [Gordon] dispensed of his right to legal representation with full apprehension of the risk that he was undertaking in representing himself." *James,* 934 F.2d at 473.

■ Gordon, as did the defendant in *James,* complains that the colloquy was deficient because it did not tell him of the technical problems he would experience in representing himself.[5] *See James,* 934 F.2d at 473. As in *James,* Gordon's complaint is unavailing. Gordon's premise is that there are specific warnings which must be given before any waiver can be deemed "knowing." That view is contrary to the express parameter of *James* and *Welty* that a "detailed listing of advice" is not required. *James,* 934 F.2d at 473–74; *Welty,* 674 F.2d at 189. Rather, the key inquiry is whether the record demonstrates a knowing waiver. *James,* 934 F.2d at 473–74. Here, the record amply demonstrates that Gordon's waiver of counsel was made with full knowledge of the attendant disadvantages and dangers.

In the first instance, Gordon acknowledges that he was fully aware of the charges and possible sentence of life imprisonment as a habitual offender. Gordon's claim that there was no inquiry into his educational background or experience with the criminal justice system has little merit. While the pre-

---

**5.** Gordon's laundry list of technical objections to the waiver colloquy is as follows: (1) there was no inquiry as to Gordon's educational background or experience with the criminal justice system; (2) there was no inquiry as to whether Gordon understood the constraints imposed by the rules of evidence and criminal procedure; (3) there was no warning to Gordon that his lack of knowledge of the law might hamper him in presenting his best defense to the charges; and (4) there was no warning to Gordon that the effec-

tiveness of his case might be diminished by his dual role as counsel and accused. *See* D.I. 1.

Further, Gordon objected to the fact that when his trial commenced on June 12, 1989, the judge presiding at the trial "apparently assumed that Gordon had previously made a proper waiver of his right to counsel," made no further inquiry as to Gordon's choice of self-representation, and on the morning of trial simply advised Gordon that he would be required to abide by the court rules. *Id.*

cise contours of Gordon's educational and criminal background were not explored specifically by the judge, the judge had adequate information available to him with which to make a determination regarding these factors. A motion on record that was filed on Gordon's behalf to reduce his bail stated that Gordon had a 10th grade education. Additionally, the judge had an ample opportunity during the colloquy to personally observe that Gordon was well spoken and intelligent.

Although the judge did not ask Gordon about his criminal record, he explored the record enough to know that Gordon had significant contacts with the criminal justice system. In fact, the judge plainly understood the extent of Gordon's prior criminal record as shown by his discussion with Gordon about the mandatory sentence of life imprisonment Gordon would face if convicted of two counts of delivery of marijuana because Gordon would be sentenced as a habitual offender upon such convictions. Finally, representations made by Gordon's counsel clearly served to inform the court regarding Gordon's criminal background.[6]

■ Gordon also attacks the sufficiency of the colloquy because he claims the judge made no inquiry as to whether he understood the constraints imposed by the rules of evidence and criminal procedure. This attack likewise is unavailing because the judge informed Gordon that if he needed assistance with court procedure, Baumeister was being directed to act as standby counsel to provide such assistance. Moreover, having been advised by the judge that he could change his mind "at any time" about his decision to proceed *pro se*, Gordon chose not to do so. Then, on the morning of his trial, the presiding judge informed Gordon that although he was representing himself, he would be required to "follow the same rules that everyone else follows." D.I. 15, Transcript of Tri-

al, at 6. At no time during the colloquy on the morning of trial did Gordon express reservations about his decision or give any indication that his decision to represent himself was not competently and validly made.

■ Gordon next attacks the adequacy of the waiver colloquy because the judge purportedly failed to warn him that his lack of knowledge of the law might hamper him in presenting his best defense to the charges. This claim may be dispensed with in short order. The record amply supports the conclusion that the judge engaged in a searching inquiry with Gordon as to the specific legal issues inherent in the defense he wished to present. Indeed, the greater part of the colloquy focused on the legal aspects of Gordon's planned entrapment defense. The judge painstakingly advised Gordon of the various legal pitfalls of the proposed defense, but not until Gordon's pre-trial counsel and Gordon himself had given the judge a detailed exposition of Gordon's planned entrapment defense, the witnesses he wished to call, the content of their expected testimony and the discussions between Gordon and his counsel regarding each of the same. Finally, the judge informed Gordon that such a defense was highly unlikely to succeed and advised strongly against it.

As a final objection to the waiver colloquy, Gordon claims the judge failed to warn him that the effectiveness of his case might be diminished by his dual role as counsel and accused. This contention is manifestly incorrect. The judge plainly warned Gordon of the consequences of his decision, stating that

[n]ow before you even make the choice, you ought to think about whether you're competent to represent yourself, whether you're able to represent yourself effectively in court in front of a jury. You've told me about this entrapment defense and it's not going to wash.

---

**6.** Baumeister's representations during the colloquy included: (1) that Baumeister had "explained to Mr. Gordon that if his parole officer is called to testify there is a very likely possibility that the jury will get into his past criminal record, which was simply atrocious;" (2) that Gordon had "a 40–some page arrest record, and he has multiple convictions;" (3) that if Gordon called witnesses such as the parole officer for his

entrapment defense he would be opening a "Pandora's box regarding [his] prior criminal activity;" and (4) that Baumeister understood from the public defender originally representing Gordon in the case that "Mr. Gordon always goes to trial and does not listen to the advice of his attorney." D.I. 15, Transcript of May 8, 1989 Hearing in Delaware Superior Court, at 6–7.

D.I. 15, Transcript of May 8, 1989 Hearing in Delaware Superior Court, at 15. While perhaps lacking some of the precision that Gordon now seeks, the judge's warning here, coupled with his other admonitions, clearly was adequate to inform Gordon of the pitfalls and risks of harming his case by self-representation. To conclude otherwise is to raise form over substance, a result entirely unwarranted by constitutional precedent and the record in this case.

Despite repeated warnings from the judge concerning these hazards, Gordon insisted on exercising his right to self-representation. He was provided the additional safeguard of time to reflect on his choice. The judge granted him a one month continuance and advised him that he could change his mind at any time and have his counsel resume his defense. Despite all warnings to the contrary, Gordon persisted in his desire to waive counsel and to exercise his right of self-representation.[7] In view of the particular facts and circumstances of this case and the trial judge's extensive colloquy in which Gordon was strongly admonished not to represent himself, the Court "can reach no other conclusion but that the trial court was entirely correct in concluding that [Gordon's] waiver was knowing and intelligent." *James*, 934 F.2d at 474.

### III. CONCLUSION

Upon a careful and considered review of the record, the Court holds that Gordon made a competent and valid waiver of his Sixth Amendment right to counsel and further holds that Gordon made a competent and valid invocation of his right of self-representation.[8] The Court having concluded that

7. The Court also dispenses with Gordon's argument that he did not knowingly and intelligently waive his Sixth Amendment right to the assistance of counsel for his defense because the presiding judge at his trial did not hold a follow-up colloquy concerning Gordon's decision to represent himself at trial. As previously discussed, Gordon was advised that if "at any time" he desired counsel to represent him, he need only inform the court. During a colloquy with the presiding judge immediately after jury selection and before his trial commenced, Gordon again had the opportunity to inform the court of a change of mind but gave no indication that he no longer desired to represent himself. Rather, at that time, Gordon discussed with the judge the

Gordon failed to state a claim of constitutional error under the Sixth Amendment during his state court proceedings, his petition for federal habeas relief must be denied.

witnesses he intended to call in his defense. Gordon already having waived his right to counsel and having invoked his right to represent himself, his Sixth Amendment right to assistance of counsel was not implicated at that time.

8. The Court having determined that Gordon both competently and validly waived his Sixth Amendment right to the assistance of counsel and competently and validly invoked his right of self-representation, it need not address Gordon's arguments that the appointment of standby counsel under the facts of his case cannot cure an ineffective waiver of the right to counsel.