

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-20-2009

# USA v. Hozay Royal

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2217

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Hozay Royal" (2009). *2009 Decisions.* Paper 1519.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1519

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2217

UNITED STATES OF AMERICA

v.

HOZAY ROYAL,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 08-00001-NS-1)
District Judge: Honorable Norma L. Shapiro

Submitted Under Third Circuit LAR 34.1(a)
April 17, 2009

Before: McKEE, SMITH, and VAN ANTWERPEN, Circuit Judges

(Opinion filed: April 20, 2009)

OPINION

VAN ANTWERPEN, Circuit Judge

Hozay Royal appeals his April 16, 2008 sentence. Because Royal knowingly and

intelligently waived his right to counsel, and because the District Court did not err in

finding that he committed a criminal offense punishable by one year or more under Pennsylvania law while on escape status, we will affirm the District Court's sentence.

I.

Because we write solely for the parties, we will address only those facts necessary to our opinion.

On November 16, 2005, Royal was convicted of 71 counts of access device fraud and mail fraud, for which he was ultimately sentenced to 41 months in prison. On April 6, 2007, Royal was transferred to the Luzerne Community Corrections Center ("LCCC") in Philadelphia to serve the last 120 days of that sentence. After failing to appear for a head count at LCCC, Royal was placed on escape status on May 18, 2007. Pennsylvania state police arrested Royal for access device fraud on November 26, 2007, after learning that he had used a credit card number belonging to another person to purchase merchandise at a supply store for industrial and construction equipment in Milford Township, Pennsylvania.

On January 3, 2008, a grand jury sitting in the Eastern District of Pennsylvania returned a one-count indictment charging Royal with escape, in violation of 18 U.S.C. § 751(a). At his initial appearance on the charges, Royal stipulated to detention and requested to proceed pro se. The magistrate judge allowed him to proceed pro se but appointed standby counsel from the Federal Defender's Association.

On January 29, 2008, at the initial status conference before the District Court, Royal renewed his request to proceed pro se. The District Court conducted a colloquy to

determine whether Royal understood the nature of, and possible penalties for, the charges against him and cautioned him on the dangers of representing himself. In particular, the District Court informed Royal that

> there are certain complications about your sentence in which having a lawyer would be extraordinarily helpful. . . . [T]here are certain circumstances that lower the sentence and it would be helpful to have a lawyer who knew his or her way around the Sentencing Guidelines to make that argument for you. I don't think that as a nonlawyer you would be in as good a position to lower—argue for a lesser sentence.
>
> . . .
>
> Do you understand that if you represent yourself I can't advise you on how you should conduct your case? Aside from your willingness to consult back-up counsel you would—you won't have the help of the Court because I have to be neutral.

*Supp. App.* at 7-8. After conferring with defense counsel, Royal withdrew his request and asked the court to appoint federal defender Mark Wilson as his counsel. The District Court granted this request and stated "I will advise you, in my opinion, you've made a wise decision because a trained lawyer can defend you better than you can defend yourself." *Id.* at 10-11. On February 4, 2008, Royal entered an open guilty plea to the escape charge.

In its Presentence Report ("PSR"), the Probation Office determined that, under § 2P1.1 of the U.S. Sentencing Guidelines Manual, the base offense level for the escape charge was 13. It further determined that Royal committed a state offense punishable by a term of imprisonment of at least one year while he was on escape status; accordingly, it determined that he was not eligible for a downward adjustment under U.S.S.G. § 2P1.1(b)(3), which provides for a four-level reduction "[i]f the defendant escaped from

3

the non-secure custody of a community corrections center." The PSR applied a two-level reduction for acceptance of responsibility. Based on Royal's adjusted offense level of 11 and criminal history category of VI, the PSR calculated his guideline range as 27 to 33 months.

Before the sentencing hearing, Royal submitted pro se objections to the PSR. Because Royal was represented by counsel, the District Court entered an order striking those objections. At the March 25, 2008 sentencing hearing, Royal renewed his request to proceed pro se based on his assertion that there were aspects of the PSR that he wanted to contest and that he could address those objections more effectively than his appointed counsel. The District Court again admonished Royal about the importance of counsel in the sentencing context, stating that "[t]he sentencing guidelines, do you understand, they're very technical and . . . you will be well served by having a lawyer to represent you." *Supp. App.* at 18-19. Nevertheless, the District Court ultimately permitted Royal to proceed pro se with Mark Wilson as back-up counsel. Royal thereafter raised several objections to his criminal history calculation, which the District Court rejected. He also objected to the determination that he had committed a state offense punishable by at least one year in prison, thereby rendering him ineligible for the four-level reduction under § 2P1.1(b)(3). Royal asserted that the evidence that he had committed such an offense was insufficient, as there had been no probable cause determination on the charge. He further objected to the introduction of hearsay evidence at sentencing. Noting that the fact of charges, without more, was insufficient to establish that Royal committed the charged

4

offenses of identity theft and access device fraud, the District Court continued the sentencing hearing to permit the Government to present evidence that Royal did commit the charged offenses.

The District Court held a sentencing hearing on April 16, 2008, at which the Government offered the testimony of Craig Moritz, the salesperson who interacted with Royal in connection with the alleged fraudulent transaction. Moritz testified that Royal used the alias "Derrick Mayes, Jr." and purchased items from the store on three occasions in November 2007. In the first of these visits, Moritz stated that Royal selected some items to purchase and told Moritz that his father would call with a credit card number. A few days later, a man identifying himself as "Derrick Mayes, Sr." called with a credit card number for the purchases and said that his son would pick up the merchandise. Royal subsequently picked up the items and signed the credit card receipt "D. Mayes." Moritz further testified that the other two transactions were executed similarly. In late November 2007, Moritz received a telephone call from the store's corporate headquarters, alerting him that the "Mayes" transactions were fraudulent. Because Moritz expected Royal to return to the store to pick up remaining merchandise, Moritz notified the police, who arrested Royal when he arrived at the store. In addition, Moritz identified the credit card slips signed by Royal. The Government also offered the testimony of Brian Finn, the Pennsylvania state trooper who arrested Royal. Finn identified Royal as the person he arrested at the store and testified that Royal was charged with identity theft, conspiracy to commit identify theft, and several counts of access device fraud.

5

As a result of this testimony, the District Court rejected Royal's argument and concluded that the Government had established by a preponderance of the evidence that Royal had committed a state offense punishable by one year or more while on escape status. Based on that finding, the District Court adopted the Presentence Report's guideline calculation, which provided for a guideline range of 27 to 33 months. After considering the 18 U.S.C. § 3553(a) factors and hearing from Royal, the District Court imposed a sentence of 27 months. Royal filed this timely appeal.

II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over Royal's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

This Court exercises plenary review to determine whether a defendant's waiver of his right to counsel satisfied the Sixth Amendment. *United States v. Jones*, 452 F.3d 223, 228-29 (3d Cir. 2006). We also exercise plenary review of the District Court's interpretation of the federal Sentencing Guidelines and review its factual determinations for clear error. *United States v. Aquino*, 555 F.3d 124, 127 (3d Cir. 2009).

III.

A. Waiver of Right to Counsel

The Sixth Amendment protects a criminal defendant's right to have counsel for his defense and to refuse counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 814 (1975); *see also Jones*, 452 F.3d at 228. Indeed, a criminal defendant who refuses counsel and represents himself "'must be allowed to make that choice, even if it works

6

ultimately to his own detriment.'" *Jones*, 452 F.3d at 228 (quoting *United States v. Peppers*, 302 F.3d 120, 130 (3d Cir. 2002)). Nevertheless, because of the disadvantages of self-representation, the Supreme Court "has scrupulously required that a defendant's waiver of counsel be both voluntary and a 'knowing and intelligent relinquishment or abandonment of a known right or privilege.'" *United States v. Salemo*, 61 F.3d 214, 218 (3d Cir. 1995) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)).

Before permitting a defendant to waive his Sixth Amendment right to counsel and to proceed pro se, the District Court must ascertain that the defendant's waiver of the right to counsel is knowing, voluntary, and competently made. *Jones*, 452 F.3d at 228-29. To discharge this "'weighty responsibility,'" the trial court must "'conduct[] a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary.'" *Id.* at 228 (quoting *Peppers*, 302 F.3d at 130-31). This duty extends to all stages of the proceedings, including the sentencing stage. *Salemo*, 61 F.3d at 219 ("It is well settled that '[i]t is the solemn duty of a federal judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right *at every stage of the proceedings*.'" (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 722 (1948) (plurality)). Nevertheless, the scope of the inquiry varies depending on the stage of the proceeding; as this Court has observed, "the inquiry at sentencing need only be tailored to that proceeding and the consequences that may flow from it." *Id.*

Royal asserts that the District Court erred in permitting him to represent himself at

7

sentencing because it failed to ensure that his waiver was knowing and intelligent. Royal made his first request to proceed pro se at the initial stages of the case; in response, the District Court conducted a thorough colloquy on the record. *See Salemo*, 61 F.3d at 221 ("'[A] colloquy between the defendant and trial judge is the preferred method of ascertaining that a waiver is voluntary, knowing and intelligent." (quoting *Gov't of Virgin Islands v. James*, 934 F.3d 468, 473 (3d Cir. 1991))). During that colloquy, the District Court questioned Royal about the nature of the charges against him as well as his education level and familiarity with criminal law, described the maximum potential penalties of the charges against him, cautioned him against representing himself, told him that "a trained lawyer can defend you better than you can defend yourself," pointed out several ways in which an attorney could assist him in arguing for a lower sentence, and, ultimately, commended his "wise" decision to proceed with counsel. At sentencing, when Royal renewed his request to proceed pro se, the District Court did not conduct the same detailed colloquy. Instead, in a brief exchange, the District Court reminded Royal that "[t]he sentencing guidelines . . . they're very technical and that [he would] be well served by having a lawyer to represent [him]." Despite this warning, Royal asserted that he could object more effectively than his counsel to certain aspects of the PSR and elected to proceed pro se.

Although this exchange was brief, the District Court had already conducted a lengthy colloquy with Royal to assess his familiarity with his charges and the law, to alert him to the risks of self-representation, and to provide specific examples of how

8

representation would assist him, particularly in the sentencing stage. Accordingly, the exchange between the District Court and Royal at sentencing—a stage in the proceedings that requires less specialized knowledge than trial—was sufficient to enable the District Court to understand why Royal wanted to represent himself, to alert Royal to the risks inherent in self-representation, and to ensure that Royal's waiver of the right to counsel at the sentencing stage was voluntary, knowing, and intelligent. *See Salemo*, 61 F.3d at 219-20 ("Of course, the inquiry at sentencing need only be tailored to that proceeding and the consequences that flow from it. Therefore, it need not be as exhaustive and searching as a similar inquiry before the conclusion of trial [because] '[s]entencing hearings demand much less specialized knowledge than trials.'" (quoting *United States v. Day*, 998 F.2d 622, 626 (1st Cir. 1993))). In its decision to grant Royal's request to proceed pro se, the District Court still provided Royal with an important safeguard when it stated that it would "allow [him] to represent [him]self with Mr. Wilson as backup counsel." *Cf. James*, 934 F.2d at 472-73 ("Most significantly, the court did not allow [the defendant] to proceed completely unassisted but appointed stand-by counsel to sit with him and answer any questions that he may have had during trial.").

Our review of the record, including the District Court's lengthy colloquy with Royal at the initial stage of the case, the subsequent exchange at the sentencing hearing during which the District Court reminded him of the technical nature of the Sentencing Guidelines, and the ultimate decision to permit Royal to represent himself with the safety net of back-up counsel, makes clear that Royal's waiver of his right to counsel was

9

voluntary, knowing, and intelligent.

### B. Commission of Offense While on Escape Status

Section 2P1.1(a)(1) of the U.S. Sentencing Guidelines Manual provides for a base offense level of 13 for the crime of escape from custody or confinement if that custody or confinement results from a conviction. Section 2P1.1(b)(3) provides for a four-level reduction from that base offense level "[i]f the defendant escaped from the non-secure custody of a community corrections center, community treatment center, 'halfway house,' or similar facility" and failed to return voluntarily within ninety-six hours. Nevertheless, it provides that "this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more. " U.S.S.G. § 2P1.1(b)(3).

In its Presentence Report, the Probation Officer determined that Royal was not entitled to the four-level reduction under U.S.S.G. § 2P1.1(b)(3), citing the pending state charges of identity theft and access device fraud, in violation of 18 Pa. C.S. § 4106(a)(1), because those charges reflected Royal's commission of a state offense punishable for more than one year. Royal objected to the denial of this reduction at the March 25, 2008 sentencing hearing, arguing that no probable cause hearing on the state charges had been conducted. The District Court continued the sentencing hearing after pointing out that, in order to establish that the four-level reduction under U.S.S.G. § 2P1.1(b)(3) did not apply, the Government had to prove by a preponderance of the evidence that Royal actually

10

committed the charged offense.[1]

At the continuation of the sentencing hearing on April 16, 2008, the Government presented testimony of Craig Moritz, the salesperson at the store where Royal allegedly committed the charged offenses, and Brian Finn, the Pennsylvania state police officer who arrested Royal at the store. Moritz testified that Royal engaged in a scheme to use a credit card belonging to another individual to purchase merchandise from the supply store where he worked. Moritz further testified that he alerted the police to Royal's scheme after learning that his purchases were fraudulent, and he identified the credit card receipts from the purchases, which were signed by Royal. Finn testified that he arrested Royal at the supply store after being tipped off about his fraudulent scheme. Finn stated that Royal was charged with identity theft, conspiracy to commit identity theft, and several counts of access device fraud.

Based on this testimony, the District Court determined that the government established by a preponderance of the evidence that Royal had committed access device, a Pennsylvania state offense punishable by one year or more[2] while on escape status.  Royal

---

[1] The Supreme Court has determined that, in general, "facts relevant to sentencing [should] be proved by a preponderance of the evidence" and that "application of the preponderance standard at sentencing generally satisfies due process." *United States v. Watts*, 519 U.S. 148, 156 (1997); *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009).

[2] The District Court observed that the loss associated with the transactions triggered a first-degree misdemeanor classification. *See* 18 Pa. C.S. § 4106(c)(1)(ii). The maximum term of imprisonment for a first-degree misdemeanor in Pennsylvania is five

argues that the District Court abused its discretion in making this finding. He contends that, pursuant to 18 Pa. C.S. § 4106(a)(1), the "use" of an access device to obtain property is a required element of the offense charged, and he argues that testimony in the sentencing hearing did not show that he "used" another's access device to obtain property or services.

The District Court properly assessed the evidence proffered by the government and concluded that the evidence sufficed to prove by a preponderance that, at a minimum, Royal committed the offense of access device fraud in violation of 18 Pa. C.S. § 4106. Pennsylvania law[3] makes it unlawful to "use an access device to obtain or in an attempt to obtain property or services with knowledge that (i) the access device is counterfeit, altered or incomplete; (ii) the access device was issued to another person who has not authorized its use; (iii) the access device has been revoked or canceled; or (iv) for any other reason his use of the access device is unauthorized by the issuer or the device holder." 18 Pa. C.S. § 4106(a)(1). Royal's argument that he did not "use" the credit card involved in purchases at the Fastenal store fails. The Government's evidence from the

_____

years. 18 Pa. C.S. § 106(b)(6).

[3] As the Government's brief notes, § 4106(a)(2) further proscribes "aid[ing] or abet[ting] any other person to use an access device knowing that the access device is counterfeit, altered or incomplete, belongs to another person who has not authorized its use, has been revoked or canceled or for any reason is unauthorized by the issuer or the device holder." Because Royal "used" the access device for purposes of 18 Pa. C.S. § 4106, we need not consider the Government's subsidiary argument that, at a minimum, Royal "aid[ed] or abet[ted]" another individual in the fraudulent use of an access device.

12

store salesperson and the arresting officer demonstrates that, after placing orders at the store, Royal (or someone else) called the store with a credit card number belonging to some other individual. When Royal returned to the store to pick up the merchandise, he signed the credit card receipts using an alias. By retrieving the merchandise purchased with a credit card not his own and by signing the credit card receipts for those purchases, Royal "used" the credit card to "obtain . . . property or services." 18 Pa. C.S. § 4106(a)(1). The District Court did not err in concluding by a preponderance of the evidence that Royal committed access device fraud, an offense punishable by more than one year under Pennsylvania law, while on escape status.

Based on the foregoing, we will affirm the District Court's sentence.